J. Robert Forshey
State Bar No. 07264200
Jeff P. Prostok
State Bar No. 16352500
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
bforshey@forsheyprostok.com
jprostok@forsheyprostok.com

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| MAJESTIC LIQUOR STORES, INC., | ) | Case No. 10-43849-rfn-11 |
| MAJESTIC TEXAS PROPERTIES, L.P., | ) | Case No. 10-43850-dml-11 |
| MAJESTIC TEXAS-GRAPEVINE, L.P., | ) | Case No. 10-43851-dml-11 |
| MAJESTIC GP, LLC, | ) | Case No. 10-43852-rfn-11 |
| MAJESTIC GP II, LLC, | ) | Case No. 10-43853-dml-11 |
| | ) | |
| Debtors. | ) | **Motion for Joint** |
| | ) | **Administration Pending** |

### DECLARATION OF J. TIM PRUBAN IN SUPPORT OF APPLICATION FOR ORDER UNDER SECTIONS 327(A) AND 328(A) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF FOCUS MANAGEMENT GROUP USA, INC. AS FINANCIAL ADVISOR TO DEBTORS AND DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE

I, J. Tim Pruban, being duly sworn, and under penalty of perjury, deposes and says:

1. I am the President of Focus Management Group USA, Inc. ("Focus") and am duly authorized to make this declaration on behalf of Focus. The facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify thereto.

2. This Declaration is submitted in support of the *Application For Order Under Sections 327(a) and 328(a) Of The Bankruptcy Code Authorizing The Employment And*

*Retention Of Focus Management Group USA, Inc. As Financial Advisor To The Debtors And Debtors In Possession Nunc Pro Tunc To The Petition Date* (the "Application"), which is being submitted concurrently herewith.

3. This Declaration is also submitted as the statement required pursuant to sections 329 and 504 of title 11, United States Code (11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code")) and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4. Focus is recognized for its expertise in providing financial advisory services in financially distressed situations, including advising debtors, creditors and other constituents in chapter 11 proceedings. Focus provides a full service solution that combines operational, managerial, and financial expertise in a variety of situations. Focus provides high level strategic assessments and assists management with developing business plans. Focus also provides financial restructuring solutions to its clients. Focus' restructuring team provides a parallel approach to its operational restructuring clients, lending credibility to the transaction process.

5. Focus has agreed to provide services to the Debtors in the above-captioned chapter 11 cases pursuant to the terms and conditions of the Consulting Agreement agreement between the Debtors and Focus (the "Consulting Agreement"), a copy of which is attached hereto as **Exhibit "1"**.

6. Among other things, the Consulting Agreement provides that the Debtors shall indemnify Focus against any and all losses, claims, damages or liabilities to which Focus may become subject in connection with services provided pursuant to the Consulting Agreement in excess of the fees the Debtors have paid Focus pursuant to the Consulting Agreement. The Debtors, however, shall have no obligation to indemnify Focus, or to provide contribution or

reimbursement to Focus, to the extent any losses, claims, damages or liabilities (or expenses relating thereto) are determined by a court of competent jurisdiction (the determination having become final) to have primarily resulted from the bad faith or intentional misconduct of Focus. Focus understands that the indemnification provision in the Consulting Agreement shall be modified as follows:

    a.    Notwithstanding any provision of the Consulting Agreement to the contrary, the Debtors shall have no obligation to indemnify Focus, or provide contribution or reimbursement to Focus, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from Focus' gross negligence or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of Focus' contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Company, et al.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to Focus' gross negligence or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which Focus should not receive indemnity, contribution or reimbursement under the terms of the Consulting Agreement, as modified by this Order; and;

    b.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Debtors' case (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing this chapter 11 case, Focus believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Consulting Agreement (as modified by this Order), including without limitation the advancement of defense costs, Focus must file an application therefore in this Court, and the Debtors may not pay any such amounts to Focus before the

entry of an order by this Court approving the payment. This subparagraph b is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Focus for indemnification, contribution or reimbursement and not a provision limiting the duration of the Debtors' obligation to indemnify Focus, and;

    c.    Any limitation on liability or any amounts to be contributed by the parties to the Consulting Agreement under the terms of the Consulting Agreement shall be eliminated.

    7.    Focus will seek payment of fees for the services rendered pursuant to the Consulting Agreement and be compensated in accordance with sections 330 and 331 of the Bankruptcy Code. The hourly billing rates by personnel classification is as follows: Managing Director - $375 (discounted from standard rate of $500; Senior Consultant - $300 (discounted from standard rate of $450). Focus will also seek reimbursement for reasonable out-of-pocket expenses incurred in connection with this engagement.

    8.    The Debtors originally retained the firm of Safe Harbor Associates, LLC ("Safe Harbor") as their financial advisor. When the Debtors retained Safe Harbor, Anthony F. Wolf was a Managing Director of Safe Harbor and the invidual primarily responsible for providing the consulting services to the Debtors. Subsequently, Mr. Wolf left his employment with Safe Harbor and is joining Focus as a Managing Director. Prior to June 6, 2010 (the "Petition Date"), the Debtors paid a retainer to Safe Harbor. Also prior to the Petition Date, and upon the Debtors' decision to discontinue their egagement of Safe Harbor and to retain Focus as their financial advisor, Safe Harbor transferred $20,000 to Focus. The transfer was made out of the remaining unused portion of the retainer originally paid to Safe Harbor. The unused balance of the $20,000 transferred by Safe Harbor to Focus will be held by Focus as a prepetition retainer

and will be available to be applied to postpetition services, as approved by the Court, including pursuant to any procedures for interim compensation approved by the Court.

9. In connection with the preparation of this Declaration, Focus professionals conducted a review of its contacts with the Debtors and certain entities holding large claims against, or interests in, the Debtors that were reasonably known to Focus. Focus' review, completed under my supervision, consisted of a review of (a) the Debtors, (b) the Debtors' pre-petition secured lender, (c) the Debtors' directors and officers, (d) the creditors identified on the list of top twenty unsecured creditors of Majestic Liquor Stores, Inc., and (e) the Debtors' other professionals.

10. Focus has in the past been engaged, and may in the future be engaged by, Bank of America and affiliated entities and JP Morgan Chase (collectively, "Lenders"), and by counsels acting on behalf of Lenders, on matters wholly unrelated to the Debtors and their bankruptcy cases. All such prior engagements with Lenders have been concluded and Focus is not currently providing any services to Lenders.

11. Focus has in the past been engaged, is currently, and may in the future be engaged by, Wells Fargo Bank and affiliated entities (collectively, "Wells Fargo"), and by counsels acting on behalf of Wells Fargo, on matters wholly unrelated to the Debtors and their bankruptcy cases.

12. Focus does not have any connection with any of the other parties detailed in Section 9, above.

13. To the best of my knowledge, no one within Focus generally has any connection to the United States Trustee or any person employed in the Office of the United States Trustee in the Northern District of Texas.

14. As such, to the best of my knowledge, Focus is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, in that:

   (a) Neither Focus nor any of its professionals hold or represent any interest adverse to the Debtors' estates.

   (b) Neither Focus nor any of its professionals is or was a creditor or an insider of any Debtor.

   (c) Neither Focus nor any of its professionals are or were, within two years before the Petition Date, a director, officer or employee of any Debtor.

   (d) Focus does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors or for any other reason.

15. In addition, to the best of my knowledge and based upon the results of the search described above and disclosed herein, Focus neither holds nor represents an interest adverse to the Debtors within the meaning of Section 327(a) of the Bankruptcy Code.

16. If any new relevant facts or relationships are discovered or arise, Focus will promptly file a Bankruptcy Rule 2014(a) Supplemental Declaration.

17. No agreement presently exists to share with any other person or firm any compensation received by Focus for its services in these cases. If any such agreement is entered into, Focus undertakes to amend and supplement this Declaration to disclose the terms of any such agreement.

18. No promises have been received by Focus, or by any employee thereof, as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

19. I am generally familiar with the Bankruptcy Code and the Bankruptcy Rules, and Focus will comply with them, subject to the Orders of this Court.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 6, 2010

J. Tim Pruban

L:\BFORSHEY\Majestic Liquor #5363\Pleadings\Declaration in Support of Application to Employ Focus Management 6.4.10.doc

DECLARATION OF J. TIM PRUBAN IN SUPPORT OF APPLICATION FOR ORDER UNDER SECTIONS 327(A) AND 328(A) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF FOCUS MANAGEMENT GROUP USA, INC. AS FINANCIAL ADVISOR TO DEBTORS AND DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE – Page 7 of 7

# EXHIBIT "1"

# FOCUS MANAGEMENT GROUP USA, INC.

Agreement for Consulting Services
General Terms and Conditions

This Agreement (the "Agreement") is made this 6th day of June, 2010 by and between Focus Management Group USA, Inc. ("Focus") and Majestic Liquor Stores, Inc. and its affiliates (collectively "Client"). In consideration of the mutual covenants contained herein, the parties agree as follows:

1. Scope of Work. From time to time, Focus shall perform services for or on behalf of Client as requested by one or more "Authorizations." Each Authorization shall specify the terms and conditions of the services to be performed by Focus, and shall become effective only upon execution by Client and Focus. In the event certain provisions of an Authorization conflict with the provisions of this Agreement, the parties hereto agree that the provisions of this Agreement shall be controlling.

2. Compensation – Payment of Fees and Expenses. Client shall pay Focus fees for services as set forth in each Authorization and shall be paid upon receipt of an invoice. Time traveling is charged at 50 percent of such hourly rates. Client shall also pay Focus for all out of pocket costs and expenses incurred in connection with the services provided pursuant to this Agreement. Notwithstanding anything in the Agreement to the contrary, in the event Client commences a case under the United States Bankruptcy Code, any and all fees payable to Focus hereunder shall be paid to Focus in accordance with and subject to the provisions of the United States Bankruptcy Code and any order entered by a bankruptcy court governing the allowance and payments of fees and expenses of professional persons in Client's bankruptcy case.

3. Retainer. In respect of each Authorization, Client shall pay Focus a retainer (as described in the applicable Authorization) to cover fees and out of pocket expenses of Focus. The retainer is not a substitute for Client's timely payment of fees and out of pocket expenses, as defined in Section 2. The retainer shall be paid to Focus before Focus is obligated to perform any work in respect of the applicable Authorization. At the completion or earlier termination of the work in respect of the applicable Authorization, without further authorization from Client, Focus may apply the retainer to any unpaid fees, out of pocket expenses and other charges due Focus, and any amount of the retainer that is not required to pay Focus's fees, out of pocket expenses or other charges will be refunded to Client at such time. Client acknowledges that (i) the retainer will not be held in a separate account and may be deposited into Focus's general operating account and (ii) Client is not entitled to any interest on the retainer. Notwithstanding anything in the Agreement to the contrary, in the event Client commences a case under the United States Bankruptcy Code, any and all fees payable to Focus hereunder shall be paid to Focus in accordance with and subject to the provisions of the United States Bankruptcy Code and any order entered by a bankruptcy court governing the allowance and payments of fees and expenses of professional persons in Client's bankruptcy case.

4. Support Services. Client shall provide Focus with duplicating, secretarial and other support services at the location of the work, provided these services are necessary to complete the work. If such services are unavailable at the locations of the work, Focus may provide such services, and shall be entitled to reimbursement from Client for these services charged at the customary published hourly rates for Focus's administrative personnel as may be established by Focus from time to time, subject to Bankruptcy Court approval.

5. Rights to Work Product. Client shall retain exclusive rights to ownership of all work product hereunder. Work product shall include reports issued pursuant to any Authorization, but shall exclude, among other things, all working papers by Focus, memoranda, correspondence, notes, and calculations that Focus may have prepared or used in the development of reports. Focus shall have the right to retain copies of reports issued to Client for Focus's records. Focus shall have the right to designate in writing certain work product as belonging to Focus prior to the creation of such work product,

I

and such designated work product shall be the exclusive property of Focus if Client permits such work product created by Focus

6. **Access**. Client shall provide Focus and its Personnel (as defined below) with access to all of Client's information, Personnel, books, records, and facilities deemed necessary by Focus to complete the work under each Authorization. It may be necessary for Focus to arrange for prospective investors/lenders to visit one or more of the facilities and meet with certain members of Client. It may also be necessary for Client to make certain of its Personnel available for conference calls to answer questions of prospective Investors/lenders. Client will accommodate such requests for access, provided they are made during normal business hours. Focus will use its best efforts to (i) accommodate Client's working schedule so as not to cause undue disruption of Client's business, and (ii) attend any visits made by prospective Investors/lenders.

7. **Personnel**. Each party agrees that neither it nor its affiliates will at any time during the period commencing on the date hereof and continuing until the first anniversary of the date that (i) all work provided under all Authorizations has been completed or (ii) this Agreement is otherwise terminated, whichever occurs last, directly or indirectly, solicit for employment any current or former director, officer, employee or representative of the other party ("Personnel") without the prior written consent of the other party.

8. **Independent Contractor**. Neither Focus nor any of its Personnel shall be deemed to be an agent, employee, officer or director of Client. Under no circumstances shall Focus or any of its Personnel be, or be deemed to be, in control of the operations of Client, or to be an owner or operator or acting as a responsible person or controlling person with respect to Client.

9. **No Assumption of Liabilities**. Notwithstanding any provision herein to the contrary, Focus does not assume, and shall not be deemed to have assumed, any liabilities, debts or obligations of Client of any kind or description.

10. **Limitation of Liability; Indemnification**.
    (a) Neither Focus nor any of its Personnel shall have any liability to Client for any action taken or for refraining from the taking of any action, or for errors in judgment, except for any such claims, damages, liabilities and expenses that are found in a final judgment by a court of competent jurisdiction to have resulted primarily and directly from such person's willful misconduct or negligence of any sort.

    (b) Subject to Bankruptcy Court approval, Client hereby agrees to defend, protect, indemnify and hold harmless Focus and its Personnel (each of the foregoing being an "Indemnitee" and all of the foregoing being collectively the "Indemnitees") from and against any and all claims, actions, damages, liabilities, judgments, costs and expenses (including all fees and disbursements of counsel, legal assistants and paralegals which may be incurred in the investigation or defense of any matter and, in the event of litigation, at all trial and appellate levels) imposed upon, incurred by or asserted against any Indemnitee, whether direct, indirect or consequential and whether based on any federal, state, local or foreign laws or regulations, under common law on an equitable cause, or on contract or otherwise by reasons of an Indemnitee's services to Client (irrespective of whether an Indemnitee's services have been rendered in connection with this engagement or otherwise), except for any such claims, damages, liabilities and expenses that are found in a final judgment by a court of competent jurisdiction to have resulted primarily and directly from such Indemnitee's willful misconduct or negligence of any sort. In the event this indemnity is unenforceable as a matter of law as to a particular matter or consequence referred to herein, it shall be enforceable to the full extent permitted by law.

    (c) This indemnification applies, without limitation, to any act, omission, event or circumstance existing or occurring on or prior to the termination of the relationship between Focus and Client. The indemnification provisions set forth above shall be in addition to any liability Client may otherwise have to Focus. Without prejudice to the survival of any other obligation of Client to Focus, the

2

indemnities and obligations of Client contained herein shall survive the termination of the relationship between Focus or any Indemnitee and Client.

11. **Confidentiality**. Focus shall maintain in strict confidence any information of a non-public nature relating to Client or its business that Focus may gain or develop in the course of its engagement by Client, and shall not disclose any such information to any person during or after its engagement by Client except (i) information that is legally in Focus's possession prior to the disclosure of such information hereunder; (ii) information that, subsequent to its disclosure hereunder, becomes publicly available; (iii) information that becomes legally available to Focus on a non-confidential basis from any third party; (iv) information that Focus discloses as permitted or required by law or order of court; or (v) information that is disclosed with the consent of Client. Notwithstanding the above, Focus shall be permitted to disclose any information regarding Client to (x) Focus's Personnel who need to know such information to perform the services described in the Authorization and (y) existing creditors of Client. Upon termination of this Agreement, Focus shall return to Client all materials of a non-public nature from Client in the course of the engagement (other than Focus's work product), and shall either deliver to Client or destroy any copies thereof that it may have made or received.

12. **Termination**. This Agreement may be terminated immediately by either party, in its sole discretion, for any reason whatsoever, with or without cause, by giving written notice of termination to the other party. Upon termination of this Agreement, Focus shall be entitled to all unpaid expenses incurred pursuant to this Agreement and the remaining unpaid balance of any fee which is due and payable pursuant hereto. For the purposes of this Section 12, "Agreement" shall include any Authorization issued pursuant to this Agreement.

13. **Governing Law and Venue**. This Agreement shall be interpreted, construed and enforced under the laws of the State of Texas, without regard to conflicts of laws, regardless of the location of the performance of services hereunder. Any claim, action or proceeding involving the parties hereto shall be brought exclusively in the State of Texas, or federal courts sitting in Texas, and the parties hereby irrevocably consent to the jurisdiction of these courts and the proper venue therein, each party hereby waiving any claim that any such forum would be inconvenient.

14. **Joint and Several Obligation**. If Client consists of more than one person or entity, each shall be jointly and severally liable to perform the obligations of Client under this Agreement and any and all Authorizations. Any one or more parties constituting Client may be released from an obligation hereunder without affecting the liability of any party not so released.

15. **Miscellaneous**. This Agreement expresses the entire agreement of the parties hereto and supersedes all prior promises, representations, understandings, arrangements and agreements among the parties with respect to the subject matter hereof. No change, alteration, or modification of this Agreement shall be effective unless made in writing and signed by both parties hereto. This Agreement shall inure to the benefit of, and shall be binding upon, the successors and assigns of the parties hereto; provided, however, that Client shall not assign any right herein or delegate any duties without the prior written consent of Focus. Failure of either party hereto to enforce any of the provisions of this Agreement or any rights with respect thereto shall in no way be considered to be a waiver of such provisions or rights or in any way affect the validity of this Agreement. In the event that any provision of this Agreement is held to be invalid, void or illegal by any court of competent jurisdiction, then the court making such determination may reduce the obligations so as to be enforceable according to applicable law and enforce such obligations as reduced. The remaining provisions of this Agreement shall be enforced according to their terms

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

"Focus"  "Client"

FOCUS MANAGEMENT GROUP USA, INC.   MAJESTIC LIQUOR STORES, INC

By: _J. Jim Pruban_____  By: _Ben Lanford_____

Name: _J. Tim Pruban_____  Name: _BEN A. LANFORD JR_
Title: _President_____  Title: _PRESIDENT_____

4

# FOCUS MANAGEMENT GROUP USA, INC.

WORK/PROJECT AUTHORIZATION NO. 1

DATED: June 6, 2010

In accordance with that certain Agreement for Consulting Services dated June 6, 2010, by and between the undersigned Client and Focus Management Group USA, Inc. (the "Agreement"), Client hereby authorizes Focus Management Group USA, Inc., ("Focus") to perform the following services in accordance with the terms, conditions and covenants set forth in the Agreement and in this Authorization:

Retention:

In the event that Client commences a case under the United States Bankruptcy Code (the "Code"), Client will seek to retain Focus in the capacity of Financial Advisor.

Focus will work closely with the Client and its counsel by performing, without limitation, the following services:

Services:
1. Assist Client's personnel in the development of rolling 13 week cash flow budgets and associated cash management, disbursement, and reporting processes.

2. Assist Client in its efforts to obtain debtor-in-possession financing or cash collateral, and assist Client in its reporting of performance pursuant to applicable debtor-in-possession financing, cash collateral, or other orders entered by the Court.

3. Assist Client in its contacts and communications with its creditors and other parties at interest with respect to Client's financial, operational, and reorganization matters.

4. Assist Client in the preparation of its Plan of Reorganization, Disclosure Statement and associated financial projections.

5. Assist Client in reviewing possible reorganization plans and strategic alternatives for maximizing the debt repayment and enterprise value, advance the Client's reorganization efforts under Chapter 11 and the preparation, confirmation and consummation of its Plan of Reorganization;

6. Provide such Court testimony as may be required as to the value of the Client's assets, strategic and reorganization alternatives, operating performance, and in support of the Plan of Reorganization and other motions.

7. Provide such other services as shall be mutually agreeable and requested by Client.

Compensation:
- Retainer: Focus shall receive a retainer of $20,000 prior to the commencement of any work described herein or in the Agreement. The retainer will be applied to the fees and expenses payable by Client to Focus under the Agreement.

- Professional Fees: Professional fees for this Authorization will be charged at the following hourly rates plus reasonable expenses, as stated in Section 2 of the Agreement:
  o Managing Director (Anthony Wolf)    $375/hr (discounted from standard rate of $500/hr)
  o Senior Consultants    $300/hr (discounted from standard rate of $450/hr)

### Other Provisions:

Notwithstanding anything in the Agreement to the contrary, in the event Client commences a case under the United States Bankruptcy Code, any and all fees payable to Focus hereunder shall be paid to Focus in accordance with and subject to the provisions of the United States Bankruptcy Code and any order entered by a bankruptcy court governing the allowance and payments of fees and expenses of professional persons in Client's bankruptcy case.

"Focus"                                             "Client"

FOCUS MANAGEMENT GROUP USA, INC.                    MAJESTIC LIQUOR STORES, INC.

By: *J. Jim Pruban*                                 By: *Ben A. Lanford*

Name: J. Tim Pruban                                 Name: BEN A. LANFORD SR
Title: President                                    Title: PRESIDENT