J. Robert Forshey
State Bar No. 07264200
Jeff P. Prostok
State Bar No. 16352500
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
bforshey@forsheyprostok.com
jprostok@forsheyprostok.com

ATTORNEYS FOR MAJESTIC
LIQUOR STORES, INC., MAJESTIC TEXAS-
GRAPEVINE, L.P. AND MAJESTIC GP II, LLC

Joseph F. Postnikoff
State Bar No. 16168320
GOODRICH POSTNIKOFF & ALBERTSON, LLP
777 Main St., Suite 1360
Fort Worth, TX 76102
Telephone: (817) 335-9400
Facsimile: (817) 335-9411
jpostnikoff@gpalaw.com

ATTORNEYS FOR MAJESTIC TEXAS
PROPERTIES, L.P. AND MAJESTIC GP, LLC

John Y. Bonds, III
State Bar No. 02589100
SHANNON, GRACEY, RATLIFF & MILLER, LLP
777 Main St., Suite 3800
Fort Worth, TX 76102
Telephone: (817) 336-9333
Facsimile: (817) 336-3735
jbonds@shannongracey.com

ATTORNEYS FOR JOHN MELVIN
BRATTON, KYLE TATE FAIR AND SUZANNE
PATRICIA FAIR

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| MAJESTIC LIQUOR STORES, INC., *et al.*, | ) | Case No. 10-43849-rfn11 |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

## FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR MAJESTIC LIQUOR STORES, INC., AND ITS AFFILIATED DEBTORS

Dated: November 11, 2010

Majestic Liquor Stores, Inc. and its affiliated debtors in the above-captioned jointly administered chapter 11 cases hereby propose the following First Amended Joint Chapter 11 Plan of Reorganization pursuant to subsection 1121(c) of the Bankruptcy Code.

### ARTICLE I.

### DEFINITIONS AND INTERPRETATION

#### A.    Defined Terms

In addition to such other terms as are defined in other sections of the Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1

1.1) "Ad Valorem Tax Claim" means a Claim for taxes assessed by an appropriate Taxing Authority based on the value of the Debtors' Assets, as allowed by applicable law.

1.2) "Administrative Expense Claim" means any right to payment, whether secured or unsecured, constituting a cost or expense of administration of any of the Chapter 11 Cases allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Chapter 11 Cases including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, any allowances of compensation or reimbursement of expenses to the extent allowed by Final Order under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Debtors' estates under section 1930, chapter 123 of title 28 of the United States Code.

1.3) "Allowed" when used with respect to a Claim, means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no objection was filed timely, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order. The term "Allowed", when used with respect to an Administrative Expense Claim (including any such Claim of a Professional), shall mean an Administrative Expense Claim approved pursuant to an order of the Bankruptcy Court.

1.4) "Asset(s)" includes all rights, title, and interest in and to all property of every type or nature owned or claimed by the Debtors as of the Petition Date, together with all such property of every type or nature subsequently acquired by the Debtors through the Effective Date, including without limitation the Estate Funds, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to property as defined in section 541 of the Bankruptcy Code. Without limiting the generality of the foregoing, this shall include all claims, Causes of Action or remedies to pierce the corporate veils of the Debtors or to ignore the corporate structures of the Debtors under any applicable law and all Avoidance Actions.

1.5) "Avoidance Action" means a cause of action assertable by the Debtors pursuant to Chapter 5 of the Bankruptcy Code, including without limitation actions brought under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

1.6) "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

1.7) "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified at title 11 of the United States Code.

1.8) "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, including applicable local rules of the Bankruptcy Court.

1.9) "Bar Date" is the date established by the Bankruptcy Court for filing proofs of Claim or proofs of Interest; provided, however, that if the Bankruptcy Court has ordered an

extension of the time by which a particular Creditor may file a proof of Claim or proof of Interest, the date set with respect to such Creditor shall be the Bar Date with respect to such Creditor, but only as to such Creditor or holder of an Interest.

1.10)   "Bratton/Fair Tax Refunds" means the federal income tax refunds which the bankruptcy estates of the Individual Debtors shall receive for any tax years ending on or before December 31, 2010.

1.11)   "Business Day" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

1.12)   "Causes of Action" means all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including, but not limited to: (i) any claims, causes of action, rights or remedies created by or arising under the Bankruptcy Code, including, but not limited to, transfer avoidable and/or recoverable under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code on behalf of the Debtors and their estates; (ii) any claims, causes of action, rights or remedies that arise out of, are based upon or relate to, directly or indirectly, any collection action by the Debtors or their estates, including, but not limited to, claims for statutory damages, service charges, costs and fees; (iii) any claims, causes of action, rights or remedies that the Debtors or their estates may have against F&M Bank and/or its affiliates; and (iv) any claims, causes of action, rights or remedies that the Debtors or their estates may have against Centennial and/or its affiliates.

1.13)   "Centennial" means Vantex Enterprises, LLC, a Texas limited liability company, doing business as Centennial Fine Wine and Spirits, and all affiliates thereof.

1.14)   "Chapter 11 Cases" means the cases commenced under chapter 11 of the Bankruptcy Code pending before the Bankruptcy Court with respect to each of the Debtors styled as *In re Majestic Liquor Stores, Inc., et al.*, Case No. 10-43849-rfn11, Jointly Administered.

1.15)   "Claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

1.16)   "Claimant" means the holder of a Claim.

1.17)   "Class" means a category or group of holders of Claims or Interests as designated in Article II of the Plan.

1.18) "Collateral" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim, including any right of offset asserted against any Asset.

1.19) "Committee" means the Official Unsecured Creditors' Committee appointed by the United States Trustee in accordance with section 1102 of the Bankruptcy Code in the Chapter 11 Cases.

1.20) "Confirmation Date" means the date of entry of the Confirmation Order.

1.21) "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

1.22) "Contested," when used with respect to a Claim, means a Claim: (a) that is listed in the Schedules of the Debtors as disputed, contingent, or unliquidated, or in the amount of $0.00; (b) that is listed in the Schedules of the Debtors as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (c) that is not listed in the Schedules of the Debtors, but as to which a proof of Claim has been filed with the Bankruptcy Court; (d) any Claim as to which an objection has been or may be timely filed and which Claim has not been Allowed by a Final Order; or (e) any Claim for which the proof of Claim is filed after the Bar Date.

1.23) "Convenience Claim" means any Claim against Majestic Allowed in an amount equal to or less than $25,000 and that is not secured by a valid and enforceable Lien against any Asset, but excluding always therefrom all Administrative Expense Claims and Priority Claims.

1.24) "Creditor" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

1.25) "Cuney Property" means that certain real property in Cherokee County, Texas owned by Majestic Grapevine and located at 8841-8871 State Highway 175 West, Cuney, Texas 75759.

1.26) "Debtors" means, collectively, Majestic, Majestic Properties, Majestic Grapevine, Majestic GP, Majestic GP II, John Bratton and Kyle Fair and Suzanne Fair, the debtors and debtors-in-possession in the Chapter 11 Cases.

1.27) "Disallowed", when used with respect to all or any part of a Claim or Interest, means that portion of a Claim or Interest to which an Objection or motion to disallow has been sustained by a Final Order.

1.28) "Disclosure Statement" means the written statement, as amended, supplemented, or modified from time to time, describing the Plan that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code and Bankruptcy Rule 3018.

1.29) "Disputed Claim" means a Claim asserted by a Creditor: (a) in an amount, or (b) on a basis, contested by the Debtors and objected to by the Debtors by the Objection Deadline.

1.30) "Distribution Year" means the year ending on each successive January 31 beginning with January 31, 2012.

1.31) "Effective Date" means December 31, 2010 if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay, and upon which all conditions to the effectiveness of the Plan set forth in Article XI below are satisfied.

1.32) "Estate Funds" means the funds held by the Reorganized Debtors (including held by the Reorganized Debtors' counsel) on the Effective Date or received thereafter regardless of the source of such funds.

1.33) "Event of Default" means the failure or neglect of the Reorganized Debtors to perform, keep, or observe any term, covenant, or condition of the Plan, but only if the Event of Default is not cured prior to the expiration of the applicable cure period.

1.34) "F&M Bank" means The F&M Bank & Trust Company.

1.35) "F&M Bank Claim" means the indebtedness held by F&M Bank evidenced by that certain Loan and Security Agreement dated April 27, 2009, by and between Majestic as borrower and F&M Bank as lender, that certain Note dated April 27, 2009, in the original principal amount of $16,000,000 payable by Majestic to F&M Bank, any and all other documents and agreements by and between Majestic as borrower and F&M Bank as lender related to the foregoing, all guarantees issued in connection with any of the foregoing, as all of the foregoing have been amended, modified, supplemented, extended and/or restated from time to time.

1.36) "F&M Bank Exit Facility" means that certain secured revolving loan facility between Reorganized Majestic and F&M Bank. A term sheet describing the principal terms of the F&M Bank Exit Facility is attached as **Exhibit "A"** to the Plan.

1.37) "F&M Bank Exit Facility Documents" means the form of credit agreement, New F&M Bank Note and other documents in respect of the F&M Bank Exit Facility as agreed upon by Majestic and F&M Bank. The form of the F&M Bank Exit Facility Documents shall be consistent with the terms set forth in **Exhibit "A"** to the Plan.

1.38) "Final Order" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired, or for which order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding.

1.39) "Individual Debtors" means, collectively, John Bratton, Kyle Fair and Suzanne Fair.

1.40) "Initial Distribution Date," when used with respect to each Claim, means the later of:

    (a) as to Claims which are not Contested, the first day of the first calendar month beginning at least thirty (30) days following the Effective Date; or

(b) as to any Contested Claim, the first day of the first calendar month beginning at least one hundred twenty (120) days after the date on which a Contested Claim becomes an Allowed Claim.

The Initial Distribution Date shall be separately determined with respect to each Allowed Claim based upon the date each such Claim became an Allowed Claim.

1.41) "Interdebtor Claim" means any Claim held by any Debtor against any other Debtor that occurred or came into existence prior to the Petition Date; provided, however, that the term "Interdebtor Claim" shall not include (a) any Rejection Claim held by any Debtor against Majestic, or (b) the Majestic Properties Avoidance Claim.

1.42) "Interests" shall refer to any equity or ownership interest in the Debtors including all stock of any class in the Debtors.

1.43) "John Bratton" means John Melvin Bratton, an individual, who is the debtor in Case No. 10-43883-rn11.

1.44) "Kyle Fair" means Kyle Tate Fair, an individual, who is one of the debtors in Case No. 10-43885-rfn11.

1.45) "Leggett Estate" means The Estate of Helen G. Leggett and any Person claiming through the Leggett Estate.

1.46) "Leggett Estate Claim" means the indebtedness held by the Leggett Estate evidenced by the Leggett Note.

1.47) "Leggett Note" means that certain Promissory Note dated May 14, 2004, in the original principal amount of $4,600,000 payable by John Bratton and Kyle Fair to Helen Leggett, as the same has been renewed, extended and/or modified, which is currently held by the Leggett Estate and which is secured by a Lien on the Interests in Majestic owned by John Bratton and Kyle Fair pursuant to a Pledge Agreement dated May 14, 2004 by and between John Bratton, Kyle Fair, Helen Leggett and Majestic.

1.48) "Lien" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any Asset, including any right of offset asserted against any Asset.

1.49) "Majestic" means Majestic Liquor Stores, Inc., a Texas corporation, which is the debtor in Case No. 10-43849-rfn11.

1.50) "Majestic Debtors" means, collectively, Majestic, Majestic Properties, Majestic Grapevine, Majestic GP and Majestic GP II.

1.51) "Majestic GP" means Majestic GP, LLC, a Texas limited liability company, which is the debtor in Case No. 10-43852-rfn11.

1.52) "Majestic GP II" means Majestic GP II, LLC, a Texas limited liability company, which is the debtor in Case No. 10-43853-rfn11.

1.53)  "Majestic Grapevine" means Majestic Texas-Grapevine, L.P., a Texas limited partnership, which is the debtor in Case No. 10-43851-rfn11.

1.54)  "Majestic Properties" means Majestic Texas Properties, L.P., a Texas limited partnership, which is the debtor in Case No. 10-43850-rfn11.

1.55)  "Majestic Properties Avoidance Claim" means any cause of action assertable by Majestic against Majestic Properties pursuant to section 547 of the Bankruptcy Code to recover, as preferential transfers, any payments made by Majestic to Majestic Properties within one (1) year prior to Majestic's Petition Date.

1.56)  "Majestic Properties Lubbock Property" means that certain real property located at 10101 Highway 87, Lubbock, Texas 79423 which was previously owned by Majestic Properties and subsequently purchased by NNN by credit bid at a foreclosure sale held on or about November 2, 2010.

1.57)  "Majestic Properties Savings Account" means the funds which have been separately held by Majestic Properties for acquisition and development purposes.

1.58)  "New F&M Bank Note" means the promissory note, payable by Reorganized Majestic, issued in connection with the F&M Bank Exit Facility and in satisfaction of the F&M Bank Claim.

1.59)  "NNN" means NNN TRS, Inc., a Maryland corporation and current holder of the NRP Claim.

1.60)  "NRP" means National Retail Properties, LP, a Delaware limited partnership.

1.61)  "NRP Claim" means the indebtedness currently held by NNN evidenced by that certain Promissory Note dated July 16, 2007, in the original principal amount of $14,000,000 executed by John Bratton, Kyle Fair and Suzanne Fair payable to NRP, and which is secured by a Deed of Trust and Security Agreement of even date therewith executed by Majestic Properties in favor of Timothy R. Miedona, Trustee, any and all other documents and agreements by and between John Bratton, Kyle Fair, Suzanne Fair and/or Majestic Properties as borrowers and NRP as lender related to the foregoing, all guarantees issued in connection with any of the foregoing, as all of the foregoing have been amended, modified, supplemented, extended and/or restated from time to time; provided, however, that the term "NRP Claim" shall not include any Rejection Claim held by NRP against Majestic.

1.62)  "NRP Deficiency" means the remaining unpaid balance of the NRP Claim after NNN's foreclosure of its Lien against the Majestic Properties Lubbock Property, determined in accordance with the applicable provisions of Chapter 51 of the Texas Property Code.

1.63)  "Objection" includes (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, shall include a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

1.64)  "Objection Deadline" means such date after the Effective Date as may be fixed by the Bankruptcy Court for the filing of objections to Claims.

1.65) "Other Secured Claim" means all Secured Claims other than the F&M Bank Claim, the Leggett Estate Claim, the NRP Claim and the Wells Fargo Claim.

1.66) "Person" means any individual, corporation, general partnership, limited partnership association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

1.67) "Petition Date" means:

(a)     With respect to the Majestic Debtors, June 6, 2010, the date on which the bankruptcy cases of the Majestic Debtors were filed; and

(b)     With respect to the Individual Debtors, June 8, 2010, the date on which the bankruptcy cases of the Individual Debtors were filed.

1.68) "Plan" means this chapter 11 plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time.

1.69) "Plan Rate" means a rate of interest of five and one-half percent (5.5%) per annum or such other annual rate of interest that the Bankruptcy Court determines is necessary in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

1.70) "Priority Claim" means a Claim, other than an Administrative Expense Claim, to the extent that such Clam is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.71) "Professional" shall mean (a) those Persons retained pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code, or (b) Persons retained by the Reorganized Debtors to administer and/or effectuate the Plan after the Effective Date.

1.72) "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any executory contract or unexpired lease.

1.73) "Reorganized", when used with respect to any Debtor, means such Debtor from and after the Effective Date of this Plan.

1.74) "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been or may be subsequently amended or supplemented.

1.75) "Secured Claim" means (a) a Claim secured by a lien on any Assets, which lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, and which is duly established in the Chapter 11 Cases, but only to the extent of the value of the holder's interest in the collateral that secures payment of the Claim; (b) a Claim against the Debtors that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy

Code; and (c) a Claim deemed or treated under the Plan as a Secured Claim; provided, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as an Unsecured (General) Claim unless, in any such case the class of which Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.76) "Substantial Consummation" means the day on which a Creditor first receives a distribution of any kind under the terms and provisions of the Plan.

1.77) "Suzanne Fair" means Suzanne Patricia Fair, an individual, who is one of the debtors in Case No. 10-43885-rfn11.

1.78) "Taxing Authority" shall include the State or any subdivision thereof, including without limitation any political subdivision of the State, assessing ad valorem taxes against any of the Assets.

1.79) "Tax Claim" shall refer to any Claim for or relating to any type or form of taxes, whether assessed by the United States of America, the IRS or any Taxing Authority, including without limitation property, ad valorem, excise, sales, fuel, income or franchise taxes, and whether the tax is assessed against the Debtors as a taxpayer or as a holder of trust fund taxes.

1.80) "Unclaimed Property" means any cash, distribution, or any other property of the Reorganized Debtors unclaimed for a period of one (1) year after the applicable Initial Distribution Date.

1.81) "Unsecured (General) Claim" means, as to any of the Debtors, any Claim against such Debtor that is not secured by a valid and enforceable Lien against any Asset, but excluding always therefrom all: (a) Administrative Expense Claims; (b) Priority Claims; and (c) Claims included in Classes 1, 3, 4, 5, 6, 7, 8, 9 and 11 defined and set forth in Article II below.

1.82) "Wells Fargo" means Wells Fargo Bank, N.A.

1.83) "Wells Fargo Claim" means the indebtedness held by Wells Fargo evidenced by that certain Loan Agreement dated February 11, 2008, by and between Majestic Grapevine as borrower and Century Bank, N.A. (predecessor in interest to Wells Fargo) as lender, that certain Deed of Trust Note dated February 11, 2008, in the original principal amount of $4,921,500 payable by Majestic Grapevine to Century Bank, N.A. (predecessor in interest to Wells Fargo) and which is secured by a Deed of Trust of even date therewith executed by Majestic Grapevine in favor of Rudy Beuttenmuller, Trustee, any and all other documents and agreements by and between Majestic Grapevine as borrow and Century Bank, N.A. as lender and/or Wells Fargo as lender related to the foregoing, all guarantees issued in connection with any of the foregoing, as all of the foregoing have been amended, modified, supplemented, extended and/or restated from time to time.

1.84) "Wells Fargo Deficiency" means the remaining unpaid balance of the Wells Fargo Claim, if any, after Wells Fargo's foreclosure of its Lien against the Cuney Property, determined in accordance with the applicable provisions of Chapter 51 of the Texas Property Code.

**B.** **Interpretation.** Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the

same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. The rules of construction set forth in section 102 of the Bankruptcy Code, other than section 102(5) of the Bankruptcy Code, apply to construction of the Plan. For the purposes of construction of the Plan, "or" is disjunctive.

    **C.**    **Other Terms**. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

    **D.**    **Exhibits**. All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

## ARTICLE II.

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1.    The following is a designation of the Classes of Claims under the Plan. Administrative Expense Claims and Priority Tax Claims have not been classified and are excluded from the following classes in accordance with section 1123(a)(1) of the Bankruptcy Code. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class. A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

2.2.    Claims and Interests. Allowed Claims and Interests are classified under this Plan as follows:

    (a)    Class 1 – Convenience Claims Against Majestic

    (b)    Class 2 – Unsecured (General) Claims Against Majestic

    (c)    Class 3 – F&M Bank Claim

    (d)    Class 4 – Ad Valorem Tax Claims Against the Majestic Debtors

    (e)    Class 5 – Wells Fargo Claim

    (f)    Class 6 – NRP Claim

    (g)    Class 7 – Leggett Estate Claim

    (h)    Class 8 – Other Secured Claims Against John Bratton

    (i)    Class 9 – Other Secured Claims Against Kyle Fair and Suzanne Fair

    (j)    Class 10 – Unsecured (General) Claims Against the Individual Debtors

    (k)    Class 11 – Interests in the Debtors

2.3.    Separate Classification of Other Secured Claims.  Although all Other Secured Claims against John Bratton and all Other Secured Claims against Kyle Fair and Suzanne Fair have been placed in two classes for purposes of nomenclature, each such Other Secured Claim shall be treated as a separate class for purposes of voting on the Plan and receiving Plan Distributions.

2.4.    Impaired Classes of Claims and Interests.  Other Secured Claims against John Bratton, Other Secured Claims against Kyle Fair and Suzanne Fair, and Interests in the Debtors are not impaired under the Plan.  All other classes of Claims and Interests are impaired under the Plan.

2.5.    Impairment Controversies.  If a controversy arises as to whether any Claim or Interest, or any class of Claims or Interests, is impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

## ARTICLE III.

## TREATMENT OF UNCLASSIFIED CLAIMS

3.1.    Unclassified Claims.  Administrative Expense Claims and Priority Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively.

3.2.    Treatment of Administrative Expense Claims.

(a)    Each holder of an Allowed Administrative Expense Claim shall receive the amount of such holder's Allowed Administrative Expense Claim (i) in one cash payment on the earlier of the Effective Date or the tenth (10th) Business Day after such Claim becomes an Allowed Claim, or (ii) in accordance with such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtors or ordered by the Bankruptcy Court.

(b)    Unless the Bankruptcy Court orders to the contrary or the Reorganized Debtors agree to the contrary in writing, the holder of a Claim for an Administrative Expense, other than (i) such a Claim by a Professional, (ii) a liability incurred and payable after the Petition Date in the ordinary course of business by a Debtor, or (iii) an Administrative Expense Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve upon the Reorganized Debtors, the Committee, and the United States Trustee, as set forth herein, a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date.  Such notice must include at a minimum:  (A) the name of the Debtor(s) which are purported to be liable for such Claim, (B) the name, address, telephone number and fax number (if applicable) of the holder of such Claim, (C) the amount of such Claim, and (D) the basis of such Claim (including any documentation evidencing or supporting such Claim).  **THE FAILURE TO FILE A PROOF OF ADMINISTRATIVE CLAIM ON OR BEFORE THE ADMINISTRATIVE CLAIMS BAR DATE AND THE FAILURE TO SERVE SUCH NOTICE TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED, DISALLOWED AND DISCHARGED WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT.**

(c)    An Administrative Expense Claim with respect to which notice has been properly filed and served pursuant to Article 3.2(b) shall become an Allowed Administrative Expense

Claim if no objection is filed within thirty (30) days after the later of (i) the Effective Date, or (ii) the date of service of the applicable notice of Administrative Expense Claim or such later date as may be approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing. If an objection is filed within such 30-day period (or any extension thereof), the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order.

(d)     The above procedures shall not apply to Professionals, who shall file and submit a final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date. An Administrative Expense Claim of a Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order. Professional fees and expenses of any Professional retained by the Reorganized Debtors and incurred on or after the Effective Date may be paid without necessity of application to or order by the Bankruptcy Court.

3.3.     Treatment of Priority Tax Claims. Unless otherwise agreed with a holder of an Allowed Priority Tax Claim, each of the Debtors, in their sole discretion, may choose whether Allowed Priority Tax Claims will be paid either: (i) in cash, in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest from and after the Effective Date at the applicable statutory rate of interest determined under applicable nonbankruptcy law during the month in which the Plan is confirmed, without penalties, and paid in regular quarterly installments of equal amount over a period not exceeding four (4) years from the Petition Date; or (ii) in full in cash on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim. The Debtors reserve the right to prepay, without penalty, at any time under option (i) above.

3.4.     United States Trustee's Fees. All quarterly United States Trustee's fees pursuant to 28 U.S.C. section 1930(a)(6) shall be paid as of the Effective Date and thereafter as the same may become due.

## ARTICLE IV.

## TREATMENT OF CLAIMS AND INTERESTS

4.1.     Class 1 -- Convenience Claims Against Majestic. Each holder of an Allowed Convenience Claim shall receive, within six (6) months of the Effective Date, a single cash payment in an amount equal to one hundred percent (100%) of such holder's Allowed Convenience Claim. All payments on account of Allowed Class 1 Claims shall be made by Reorganized Majestic.

Class 1 is impaired.

4.2.     Class 2 – Unsecured (General) Claims Against Majestic. Holders of Allowed Unsecured (General) Claims against Majestic shall be paid and treated as follows:

(a)     The unpaid balance of all Allowed Class 2 Claims shall bear interest from and after the Effective Date until paid at the Plan Rate.

(b)     Each holder of an Allowed Class 2 Claim shall receive distributions equal to 100% of such Allowed Claim, plus interest thereon calculated as set forth in Article 4.2(a) above, payable as set forth in Articles 4.2(c), (d) and (e) below.

(c)     No later than the tenth (10th) day of the eighth (8th) calendar month beginning after the Effective Date, and continuing thereafter until all Allowed Class 2 Claims are paid in full, Reorganized Majestic shall distribute each month, on a *pro rata* basis, the sum of $125,000 to the holders of Allowed Class 2 Claims. Each such payment shall be applied first to accrued interest on such Class 2 Claims through the last day of the calendar month immediately preceding the calendar month in which payment is due, and then to the payment of the principal amount of each such Claim.

(d)     Until all Allowed Class 2 Claims are paid in full, no later than the March 31 immediately following the end of each Distribution Year, Reorganized Majestic shall deposit funds (the "Additional Distribution Funds") into a separate escrow account to be held for the benefit of holders of Allowed Class 2 Claims. The amount of the Additional Distribution Funds shall be based on a formula to be negotiated between Majestic and the Committee considering Reorganized Majestic's need for working capital, the amount of the available cash and/or availability on its line of credit, the covenants on Reorganized Majestic's line of credit and the use of capital to open additional locations. No distribution of any Additional Distribution Funds shall be made to holders of Allowed Class 2 Claims until the New F&M Bank Note has been paid in full. If on the date the New F&M Bank Note is paid in full the amount of Additional Distribution Funds exceeds the remaining unpaid balance owed on all Allowed Class 2 Claims, Reorganized Majestic shall, within ten (10) days of the date on which the New F&M Bank Note is paid in full, distribute to the holders of Allowed Class 2 Claims that amount of Additional Distribution Funds necessary to fully pay the remaining unpaid balance of all Allowed Class 2 Claims. If on the date the New F&M Bank Note is paid in full the amount of Additional Distribution Funds is less than the remaining unpaid balance owed on all Allowed Class 2 Claims, Reorganized Majestic shall (i) distribute the Additional Distribution Funds to holders of Allowed Class 2 Claims on a *pro rata* basis within ten (10) days of the date on which the New F&M Bank Note is paid in full (the "Initial Additional Distribution"), and (ii) make a distribution of Additional Distribution Funds to holders of Allowed Class 2 Claims by no later than each March 31 subsequent to the date on which the Initial Additional Distribution is made; *provided, however*, that the entire balance of the Allowed Class 2 Claims shall be due and payable on the fifth (5th) anniversary of the first monthly distribution of $125,000 made pursuant to Article 4.2(c) above.

(e)     If any Class 2 Claim is or becomes a Disputed Claim, Reorganized Majestic shall make distributions on account of such Claim, without waiver or compromise of any objection thereto, based upon either (i) the proof of claim filed by any such Class 2 Claimant, or (ii) an order of the Bankruptcy Court estimating the amount of any such Class 2 Claim for purposes of distributions until it becomes an Allowed Claim. If any Disputed Claim is ultimately Allowed in an amount less than the amount used to calculate distributions while a Disputed Claim, then the amount of any overpayment to such Claimant shall be subtracted from future distributions on account of such Allowed Class 2 Claim until the amount of the overpayment has been recouped, after which distributions will be made based on the Allowed amount of such Class 2 Claim. If such Class 2 Claim is ultimately Allowed in an amount greater than the amount used to calculate distributions while a Disputed Claim, the first dollars of any subsequent distribution to Class 2 Creditors will be distributed to any such underpaid Class 2 Claimant until each has been paid the appropriate *pro rata* amount on account of such Allowed Claim based on the distributions to date.

(f)     All such payments on account of Allowed Class 2 Claims shall be made by Reorganized Majestic.

Class 2 is impaired.

4.3.     Class 3 – F&M Bank Claim.  In full satisfaction of the F&M Bank Claim, Reorganized Majestic shall execute and deliver to F&M Bank the New F&M Bank Note dated as of the Effective Date of the Plan, payment of which will be secured by the liens granted to F&M Bank pursuant to the F&M Bank Exit Facility Documents.  The liens granted to F&M Bank pursuant to the F&M Bank Exit Facility Documents shall be retained by F&M Bank until the New F&M Bank Note has been paid in full.  The principal terms of the F&M Bank Exit Facility and the New F&M Bank Note are set forth in **Exhibit "A"** to the Plan.

Class 3 is impaired.

4.4.     Class 4 – Ad Valorem Tax Claims Against the Majestic Debtors.  Except to the extent that any holder of an Ad Valorem Tax Claim and the Majestic Debtors agree otherwise, Allowed Ad Valorem Tax Claims against the Majestic Debtors shall be paid and treated as follows:

(a)     All Allowed Ad Valorem Tax Claims against the Majestic Debtors shall bear interest at the applicable statutory rate of interest determined under applicable nonbankruptcy law during the month in which the Plan is confirmed.  Each holder of an Allowed Ad Valorem Tax Claim shall receive distributions equal to one hundred percent (100%) of such Allowed Claim, payable in sixteen (16) substantially equal quarterly installment payments, each including both principal and interest, without penalties.  The first such installment shall be due and payable on the applicable Initial Distribution Date, with a like installment being due and payable quarterly thereafter until such Allowed Ad Valorem Tax Claim is paid in full.  For example, if the applicable Initial Distribution Date is February 1, future quarterly installments will be due and payable on May 1, August 1 and November 1.

(b)     The holders of Allowed Ad Valorem Tax Claims against the Majestic Debtors shall retain their Liens on the applicable portion of the Majestic Debtors' Assets until such Allowed Claims are paid in full.

(c)     The Reorganized Majestic Debtors may, in the exercise of their sole discretion, accelerate the payment schedule as to any Allowed Ad Valorem Tax Claim.  The Reorganized Majestic Debtors shall never have any obligation to accelerate the payment schedule as to any such Class 4 Creditor, but may do so on a case-by-case basis, on such terms and in such manner as the Reorganized Majestic Debtors, in the exercise of their sole discretion, may deem appropriate.

(d)     All payments on account of Allowed Class 4 Claims shall be made by the Reorganized Majestic Debtor responsible for such Allowed Ad Valorem Tax Claim.

Class 4 is impaired.

4.5.     Class 5 – Wells Fargo Claim.  Except to the extent that Wells Fargo and Majestic Grapevine agree otherwise in writing, the Wells Fargo Claim shall be paid and treated as follows:

(a)     If it has not already done so, Wells Fargo shall proceed to foreclose its Lien against the Cuney Property in accordance with the applicable provisions of the Texas Property Code.

(b)     If the price paid at the foreclosure sale of the Cuney Property is insufficient to fully satisfy the Wells Fargo Claim, the amount of the Wells Fargo Deficiency shall be determined by the Bankruptcy Court in accordance with the applicable provisions of Chapter 51 of the Texas Property Code.

(c)     On account of the Wells Fargo Deficiency, if any, Wells Fargo shall receive:

(i)     On the first day of the second calendar month following the calendar month in which the amount of the Wells Fargo Deficiency is determined, a cash payment equal to the lesser of (A) the amount of the Wells Fargo Deficiency, or (B) $60,000; and

(ii)     In the event that the cash payment required under Article 4.5(c)(i) above is insufficient to fully satisfy the Wells Fargo Deficiency, one or more cash payments equal to the lesser of (A) the remaining unpaid balance of the Wells Fargo Deficiency, or (B) the amount paid to Majestic Grapevine by Majestic pursuant to the Plan on account of Majestic Grapevine's Rejection Claim against Majestic arising as a result of Majestic's rejection of the lease between Majestic and Majestic Grapevine with respect to the Cuney Property.  Any such cash payment(s) required under this Article 4.5(c)(ii) shall be made by Majestic Grapevine to Wells Fargo within seven (7) Business Days of the date(s) on which Majestic Grapevine receives payment(s) from Majestic pursuant to the Plan on account of Majestic Grapevine's Rejection Claim.

(d)     All payments on account of Wells Fargo Claim shall be made by Reorganized Majestic Grapevine.

Class 5 is impaired.

4.6.     Class 6 – NRP Claim.  Except to the extent that NNN agrees otherwise, the NRP Claim shall be paid and treated as follows:

(a)     The NRP Claim shall be reduced by $1,200,000 on account of the credit bid made by NNN at the foreclosure sale of the Majestic Properties Lubbock Property held on or about November 2, 2010.

(b)     The amount of the NRP Deficiency shall be determined by the Bankruptcy Court in accordance with the applicable provisions of Chapter 51 of the Texas Property Code.

(c)     In full, final and complete satisfaction of the NRP Deficiency, NNN shall receive the following distributions: (i) all amounts required to be paid by Reorganized Majestic pursuant to Article 4.2 of the Plan on account of the Rejection Claim held by Majestic Properties against Majestic arising as a result of Majestic's rejection of the lease of the Majestic Properties Lubbock Property shall be paid by Reorganized Majestic directly to NNN; and (ii) a cash distribution equal to the lesser of (A) the NRP Deficiency, or (B) the approximate amount of $2,400,000 shall be made to NNN by the Individual Debtors, with such cash distribution to be made from the Bratton/Fair Tax Refunds on the first day of the first calendar month that is at

least thirty (30) days after the date on which the Individual Debtors receive the Bratton/Fair Tax Refunds.

Class 6 is impaired

4.7. Class 7 – Leggett Estate Claim. Except to the extent that the Leggett Estate, John Bratton and Kyle Fair agree otherwise, the Leggett Estate Claim shall be paid and treated as follows:

(a) The Leggett Estate Claim shall bear interest from and after the Effective Date until paid at the non-default contract rate of interest set forth in the Leggett Note.

(b) The Leggett Estate shall receive distributions equal to one hundred percent (100%) of the Leggett Estate Claim as follows: (i) through seventy-two (72) monthly installment payments, with each of the first thirty-six (36) such installments being payments of interest only, and each of the final thirty-six (36) such installments including both interest and a principal payment of five thousand dollars ($5,000), with the first such installment being due and payable on the Initial Distribution Date, with a like installment being due and payable on the first day of each successive calendar month thereafter until each of the seventy-two (72) installment payments have been made; and (ii) on the first day of the calendar month immediately following the calendar month during which the seventy-second (72nd) installment payment is made, the remaining unpaid principal balance of the Leggett Estate Claim and any accrued and unpaid interest thereon shall be due and payable.

(c) The Leggett Estate shall retain its Lien on the Interests in Majestic owned by John Bratton and Kyle Fair until the Leggett Estate Claim is paid in full.

(d) All payments required to be made to the Leggett Estate herein shall be made by John Bratton and/or Kyle Fair.

(e) John Bratton and Kyle Fair may, in the exercise of their discretion, accelerate the payment schedule as to the Leggett Estate Claim. John Bratton and Kyle Fair shall never have any obligation to accelerate the payment schedule as to the Leggett Estate Claim, but may do so on such terms and in such manner as they, in the exercise of their discretion, may deem appropriate.

Class 7 is impaired.

4.8. Class 8 – Other Secured Claims Against John Bratton. Except to the extent that the holder of an Allowed Other Secured Claim against John Bratton agrees to less favorable treatment, each Allowed Other Secured Claim against John Bratton shall, on the Effective Date, be reinstated or rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the holder of an Allowed Other Secured Claim against John Bratton to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of a default. All Allowed Other Secured Claims against John Bratton that are not due and payable on or before the Effective Date shall, at John Bratton's option, be paid (a) in the ordinary course in accordance with the course of practice between John Bratton and such holder with respect to such Claim, or (b) by transfer of the Collateral securing such Claim to the holder of such Claim, each in full and complete satisfaction, settlement and release of and in exchange for such Claim. All payments on account of Allowed Class 8 Claims shall be made by John Bratton.

Class 8 is unimpaired.

4.9.     Class 9 – Other Secured Claims Against Kyle Fair and Suzanne Fair.  Except to the extent that the holder of an Allowed Other Secured Claim against Kyle Fair and/or Suzanne Fair agrees to less favorable treatment, each Allowed Other Secured Claim against Kyle Fair and/or Suzanne Fair shall, on the Effective Date, be reinstated or rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the holder of an Allowed Other Secured Claim against Kyle Fair and/or Suzanne Fair to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of a default.  All Allowed Other Secured Claims against Kyle Fair and/or Suzanne Fair that are not due and payable on or before the Effective Date shall, at Kyle Fair's and/or Suzanne Fair's option, be paid (a) in the ordinary course in accordance with the course of practice between Kyle Fair and/or Suzanne Fair and such holder with respect to such Claim, or (b) by transfer of the Collateral securing such Claim to the holder of such Claim, each in full and complete satisfaction, settlement and release of and in exchange for such Claim.  All payments on account of Allowed Class 9 Claims shall be made by Kyle Fair and/or Suzanne Fair.

Class 9 is unimpaired.

4.10.     Class 10 – Unsecured (General) Claims Against the Individual Debtors.  Holders of Allowed Unsecured (General) Claims against the Individual Debtors shall be paid and treated as follows:

(a)     All Allowed Class 10 Claims shall bear interest from and after the Effective Date until paid at the Plan Rate.

(b)     Each holder of an Allowed Class 10 Claim shall receive distributions equal to one hundred percent (100%) of such Allowed Claim in eight (8) substantially equal quarterly installment payments, each including both principal and interest.  The first such installment shall be due and payable on the applicable Initial Distribution Date, with a like installment being due and payable quarterly thereafter until such Allowed Class 10 Claim is paid in full.  For example, if the applicable Initial Distribution Date is February 1, future quarterly installments will be due and payable on May 1, August 1 and November 1.

(c)     The Reorganized Individual Debtors may, in the exercise of their sole discretion, accelerate the payment schedule as to any Allowed Class 10 Claim.  The Reorganized Individual Debtors shall never have any obligation to accelerate the payment schedule as to any such Class 10 Creditor, but may do so on a case-by-case basis, on such terms and in such manner as the Reorganized Individual Debtors, in the exercise of their sole discretion, may deem appropriate.

(d)     The Reorganized Individual Debtors shall be jointly and severally responsible for making all payments required on account of Allowed Class 10 Claims.

Class 10 is impaired.

4.11.     Class 11 – Interests in the Debtors.  Holders of Interests in the Debtors shall retain their Interests subject to the terms of the Plan.

Class 11 is unimpaired.

# ARTICLE V.

## ACCEPTANCE OR REJECTION OF PLAN

5.1.    Classes Entitled to Vote.  Each impaired Class of Claims or Interests shall be entitled to vote separately to accept or reject the Plan.  Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

5.2.    Class Acceptance Requirement.  A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that has voted on the Plan.

5.3.    Cramdown.  This section shall constitute the request by the Debtors as proponents of the Plan, pursuant to section 1129(b), that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) have not been met.

# ARTICLE VI.

## MEANS OF IMPLEMENTATION AND
## GENERAL DESCRIPTION OF THE PLAN

6.1.    Assumption of Allowed Claims.  The Reorganized Debtors hereby assume the liability for and obligation to perform and make all distributions or payments on account of all Allowed Claims in the manner provided in Articles III and IV above.  All distributions or payments shall be made by the respective responsible Reorganized Debtors as set forth regarding the treatment of the respective Claims in Articles III and IV above.

6.2.    Vesting of Assets.  As of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Assets shall be transferred to, and vested in, the respective Reorganized Debtors, free and clear of all rights, title, interests, claims, liens, encumbrances and charges, except as expressly set forth in the Plan.  Without limiting the generality of the foregoing, all Assets shall vest in the Reorganized Debtors free and clear of any Lien except as expressly provided in the Plan.  On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any claim without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, each Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for all fees, disbursements, expenses or related support services of Professionals (including fees relating to the preparation of professional fee applications) without application to, or approval of, the Bankruptcy Court.

6.3.    Performance of Plan.

(a)    The payments to be made by Reorganized Majestic under the Plan shall be funded from Reorganized Majestic's income and revenues from operation of its business.

(b)    The payments to be made by Reorganized Majestic Grapevine under the Plan shall be funded from (i) available cash on hand held by Reorganized Grapevine and (ii) payments received by Reorganized Majestic Grapevine from Reorganized Majestic under the

Plan on account of Majestic Grapevine's Rejection Claim against Majestic arising from Majestic's rejection of the lease between Majestic Grapevine and Majestic with respect to the Cuney Property.

(c)     The payments to be made by Reorganized Majestic Properties under the Plan shall be made from the Majestic Properties Savings Account.

(d)     The payments to be made by the Reorganized Individual Debtors under the Plan shall be funded from (i) the funds received by the Reorganized Individual Debtors on account of the Bratton/Fair Tax Refunds, (ii) the Reorganized Individual Debtors' future earnings, and/or (iii) other sources of available cash on hand of the Reorganized Individual Debtors.

6.4     Preservation of Interdebtor Claims. All Interdebtor Claims, as the same exist as of the Effective Date, shall be preserved and remain unaffected by the Plan; provided, however, that Interdebtor Claims shall be subordinate to all other Allowed Claims and no payment or distribution shall be made on account of any Interdebtor Claim until such time as all payments and distributions on account of other Allowed Claims required under the Plan have been made; provided further, however, that the Majestic Properties Avoidance Claim is compromised between Majestic and Majestic Properties pursuant to Article 6.5 below.

6.5.     Use of Funds from Majestic Properties Savings Account for Development of Majestic. From and after the Effective Date, after all Allowed Administrative Claims are paid in full, Reorganized Majestic Properties shall, in addition to making any payments it is required to make under the Plan, utilize the funds held in the Majestic Properties Savings Account to support and further capitalize Reorganized Majestic's business operations, including the opening of new locations.

6.6.     Corporate Action.

(a)     The entry of the Confirmation Order shall constitute authorization for the Debtors and the Reorganized Debtors (as the case may be) to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, any action required by the stockholders or directors of the Debtors and the Reorganized Debtors (as the case may be), including, among other things, (i) the execution and delivery of the F&M Bank Exit Facility Documents; (ii) the adoption or amendment of any organizational documents; (iii) all transfers of Assets that are to occur pursuant to the Plan; (iv) the incurrence of all obligations contemplated by the Plan and the making of all distributions required under the Plan; (v) the reinstatement and assumption of all indemnity obligations to the directors and officers of the Debtors; (vi) taking of all actions to preserve and provide for the prosecution of retained causes of action, including but not limited to the Avoidance Actions; and (vii) entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

(b)     The officers of the Debtors and the Reorganized Debtors, as the case may be, are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary action required in connection therewith, in the name of and on behalf of the Debtors. All obligations of the Debtors to indemnify and hold harmless their current and former directors,

officers and employees, whether arising under the Debtors' constituent documents, contract, law or equity, shall be fully reinstated and assumed by the Debtors upon the occurrence of the Effective Date with the same effect as though such obligations constituted executory contracts that are assumed (or assumed and assigned, as applicable) under section 365 of the Bankruptcy Code, and all such obligations shall be fully enforceable on their terms from and after the Effective Date.

6.7. <u>Continued Corporate Existence of the Debtors</u>. Each of the Majestic Debtors shall continue to exist, as a Reorganized Debtor, after the Effective Date as a separate entity, with all the powers available to such legal entity, in accordance with applicable law and pursuant to their constituent documents. On or after the Effective Date, the Reorganized Debtors may, within their sole and exclusive discretion, take such action as permitted by applicable law and their constituent documents as they determine is reasonable and appropriate, <u>including</u> (a) causing any or all of the Reorganized Debtors to be merged into one or more of the other Reorganized Debtors or other legal entities; (b) liquidating any of the Reorganized Debtors; and (c) changing the legal name of any of the Reorganized Debtors.

6.8. <u>Initial Boards of Directors</u>. The current members of the board of directors (or managers, as applicable) of the Majestic Debtors shall continue in such positions from and after the Effective Date. Thereafter, the members of the board of directors (or managers, as applicable) of each of the Reorganized Majestic Debtors shall be selected and determined in accordance with the provisions of the organizational documents of such Reorganized Majestic Debtors and applicable law.

6.9. <u>Officers</u>. The current officers of each of the Majestic Debtors shall continue in such positions after the Effective Date in accordance with their respective employment agreements, if any, and applicable law. Thereafter, the officers of each of the Reorganized Majestic Debtors shall be selected and appointed by the respective boards of directors (or managers, as applicable) of such entities, in accordance with, and pursuant to, the provisions of applicable law and their respective organizational documents.

6.10. <u>Compensation of Reorganized Debtors' Management</u>. Unless otherwise ordered by the Bankruptcy Court, from and after the Effective Date the Reorganized Debtors' officers and directors shall be compensated at their current compensation levels; <u>provided</u>, <u>however</u>, that the salaries to be paid by Reorganized Majestic to John Bratton and Kyle Fair shall not be thereafter increased until all payments and distributions on account of Allowed Claims required under the Plan have been made, except that the salaries of John Bratton and Kyle Fair may be increased in March of each year to compensate for increases in the Consumer Price Index.

6.11. <u>Distributions by Reorganized Majestic to John Bratton and Kyle Fair for Income Tax Payments</u>. From and after the Effective Date, John Bratton and Kyle Fair may receive distributions from Majestic for the purpose of satisfying any income taxes which John Bratton and Kyle Fair are required to pay based on Majestic's status as a pass-through entity for tax purposes. Any such distributions shall be made in an amount no greater than the amount necessary to fully pay any such individual tax liability of John Bratton and Kyle Fair. Other than such distributions and the regular salaries paid to John Bratton and Kyle Fair as compensation, Reorganized Majestic shall make no other or further distributions to John Bratton and/or Kyle Fair from and after the Effective Date until such time as all payments on account of Allowed Claims required under the Plan have been made.

6.12. <u>Attorneys Fees and Costs of Secured Creditors</u>. To the extent any holder of a Secured Claim asserts a right to attorneys fees and expenses pursuant to section 506(b) of the Bankruptcy Code, unless otherwise agreed between the Debtors or Reorganized Debtors and such Secured Creditor, the allowance of such fees and expenses shall be handled as set forth in this paragraph. Within twenty-one (21) days after the Effective Date, the Secured Creditor shall file an application with the Bankruptcy Court for allowance of such fees and expenses. Such application will follow the same rules and guidelines as a fee application for a Professional seeking compensation from the Debtors, including the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses. Within twenty-one (21) days after such application is filed, the Reorganized Debtors may file any objections thereto, and the Secured Creditor shall file any response within fourteen (14) days thereafter. If the Secured Creditor and the Reorganized Debtors are unable to reach agreement, the matter shall then be submitted to the Bankruptcy Court for determination on no less than twenty-one (21) days notice of the hearing. Notwithstanding the foregoing, attorney's fees and expenses of F&M Bank shall be paid in accordance with the terms of the F&M Bank Exit Facility.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTION

7.1. <u>Date of Distributions</u>. No payment or distribution shall be made pursuant to the Plan except on account of an Allowed Claim, except as otherwise ordered by the Bankruptcy Court pursuant to a Final Order. No payment shall be made on account of any Contested Claim until such Claim is Allowed. Any payments or distributions to be made pursuant to the Plan shall be made on the respective Initial Distribution Dates applicable to each such Allowed Claim except as otherwise provided in the Plan or ordered by the Bankruptcy Court. In the event a distribution shall be payable on a day other than a Business Day, such distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been timely made on the date otherwise due. Any Unclaimed Property may be held and distributed in accordance with the Orders of the Court.

7.2. <u>Distributions Under Plan</u>. Distributions to be made to any Creditor under the Plan shall be made by the Reorganized Debtor which is responsible for making such distributions pursuant to the terms of the Plan.

7.3. <u>Means of Cash Payment</u>. Except as otherwise agreed by the Reorganized Debtors, any distribution to be made in cash under the Plan shall be made, at the election of the Reorganized Debtors, by check drawn on a domestic bank or by wire transfer from a domestic bank.

7.4. <u>Delivery of Distributions</u>. Distributions and deliveries to the holder of an Allowed Claim shall be made at the address set forth on the respective proofs of claim filed in the Chapter 11 Cases. If no proof of claim is filed, distribution shall be made to the Creditor at the address reflected in the Schedules. If any distribution is returned as undeliverable, no further distribution shall be made on account of such Allowed Claim unless and until the Reorganized Debtors are notified of such holder's then current address, at which time all missed distributions shall be made to the holder of such Allowed Claim. All claims for undeliverable distributions shall be made on or before the first anniversary of the attempted distribution. After such date, all Unclaimed Property shall revert to Estate Funds, and the Claim of any holder with respect to such property shall be discharged and forever barred.

7.5.   <u>Time Bar to Cash Payments</u>.  Checks issued on account of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Reorganized Debtors by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of the first anniversary of the Initial Distribution Date or ninety (90) days after the date of issuance of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

7.6.   <u>Cure Period</u>.  Except as otherwise set forth herein, the failure by a Reorganized Debtor to timely perform any term, provision or covenant contained in the Plan, or to make any payment required by the Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to the Plan, shall not constitute an Event of Default unless and until the Reorganized Debtor has been given thirty (30) days written notice of such alleged default.  Until the expiration of such thirty (30) day cure period, the Reorganized Debtor shall not be in default, and performance during such thirty (30) day period shall be deemed as timely for all purposes.  Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under the Plan or bringing any action or legal proceeding by any Person to enforce any right granted under the Plan.

## ARTICLE VIII.

## PROCEDURES FOR RESOLVING AND TREATING
## <u>CONTESTED AND CONTINGENT CLAIMS</u>

8.1.   <u>Objection Deadline</u>.  The Court may, but is not required to, fix an Objection Deadline; <u>provided</u>, <u>however</u>, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of claim.  If an Objection Deadline is fixed, it may be extended one or more times by order of the Bankruptcy Court pursuant to a motion filed on or before the then applicable Objection Deadline without notice or a hearing.  Any proof of claim filed more than sixty (60) days after the Effective Date shall be of no force and effect and need not be objected to.  Any Contested Claims may be litigated to Final Order.  The Reorganized Debtors may compromise and settle any Contested Claim subject to approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 after appropriate notice and opportunity for hearing.

8.2.   <u>Responsibility for Objecting to Claims</u>.  The Reorganized Debtors shall have the sole right and responsibility to (a) object to the allowance of Claims following the Effective Date, or (b) seek to subordinate any Claim.

8.3.   <u>Distributions on Account of Contested Claims</u>.  Except as otherwise expressly provided in the Plan, if a Claim is Contested, then the Initial Distribution Date as to such Contested Claim shall be determined based upon its date of Allowance, and thereafter distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan.  No distribution shall be made on account of a Contested Claim until Allowed.  Until such time as a Disputed Claim becomes fixed and absolute by a Final Order allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and distributions under the Plan.  Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

8.4. No Waiver of Right to Object. Except as expressly provided in the Plan, nothing contained in the Disclosure Statement, the Plan or the Confirmation Order shall waive, relinquish, release or impair the Reorganized Debtors' rights to object to any Claim.

8.5. Rights Under Section 505. The Reorganized Debtors shall retain all rights pursuant to section 505 of the Bankruptcy Code as to any Tax Claim. Without limiting the generality of the foregoing, the appropriate Reorganized Debtors, including John Bratton, Kyle Fair and Suzanne Fair, shall have full authority to pursue the Bratton/Fair Tax Refunds pursuant to section 505 of the Bankruptcy Code.

8.6. Allowance of Contested Claims.

(a) This section shall apply to all Contested Claims. Nothing contained in the Plan, Disclosure Statement or Confirmation Order shall change, waive or alter any requirement under applicable law that the holder of a Contested Claim must file a timely proof of claim, and the Claim of any such holder of a Contested Claim who is required to file a proof of claim and fails to do so shall be discharged and the holder of such Contested Claim shall receive no distribution through the Plan. The adjudication and liquidation of Contested Claims is a determination and adjustment of the debtor/creditor relationship, and is therefore an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable. The holder of any Contested Claim shall not have a right to trial by jury before the Bankruptcy Court in respect of any such Claim. Exclusive venue for any Contested proceeding shall be in the Bankruptcy Court. Contested Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court. Texas Rule of Civil Procedure 42 and Federal Rule of Civil Procedure 23 shall not apply to any Contested proceeding. The Reorganized Debtors shall retain all rights of removal to federal court as to any Contested proceeding.

(b) All Contested Claims shall be liquidated and determined as follows:

(i) Unless otherwise ordered by the Bankruptcy Court, any objection to a Contested Claim shall be treated as a contested proceeding subject to Rule 9014 of the Bankruptcy Rules. However, any party may move the Bankruptcy Court to apply the rules applicable to adversary proceedings to any Claim objection. The Reorganized Debtors, however, may, at their election, make and pursue any objection to a Claim in the form of an adversary proceeding.

(ii) Unless otherwise ordered by the Bankruptcy Court, or if the objection is pursued as an adversary proceeding, a scheduling order shall be entered as to each objection to a Claim. The scheduling order may include (A) discovery cut-off, (B) deadlines to amend pleadings, (C) deadlines for designation of and objections to experts, (D) deadlines to exchange exhibit and witness lists and for objections to the same, and (E) such other matters as may be appropriate.

(iii) The Bankruptcy Court may order the parties to mediate in connection with any objection to a Claim. The Reorganized Debtors may include a request for mediation in an objection, and request that the Bankruptcy Court require mediation as a part of the scheduling order.

8.7. Substantial Consummation. All distributions of any kind made to any of the Creditors or any Professionals after Substantial Consummation and any and all other actions taken under the Plan after Substantial Consummation shall not be subject to relief, reversal or

modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

8.8.    Offsets and Defenses.  The Reorganized Debtors shall be vested with and retain all defenses or affirmative defenses against any Claim, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant.  Assertion of any right of offset, recoupment or any counterclaim by the Reorganized Debtors against Claimants shall constitute a "core" proceeding.

# ARTICLE IX.

## EXECUTORY CONTRACTS AND LEASES

9.1.    Executory Contracts of Majestic Assumed.  All executory contracts or unexpired leases of Majestic not previously rejected shall be deemed as assumed upon the Effective Date. The Plan shall constitute a motion to assume all executory contracts and unexpired leases unless otherwise expressly rejected by Majestic.  However, Majestic may file a separate motion for the assumption or rejection of any executory contract or unexpired lease.

9.2.    Executory Contracts of Debtors other than Majestic Rejected.  All executory contracts or unexpired leases of any Debtor, other than Majestic, not previously assumed shall be deemed as rejected upon the Effective Date.  The Plan shall constitute a motion to reject all executory contracts and unexpired leases of the Debtors, other than Majestic, unless otherwise expressly assumed.  However, the Debtors may file a separate motion for the assumption or rejection of any executory contract or unexpired lease.

9.3.    Bar to Rejection Damages.  Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an executory contract or an unexpired lease shall be forever barred and shall not be enforceable against the Reorganized Debtors, the Estate Funds and the Assets, unless a proof of claim is filed with the Bankruptcy Court and served upon the Reorganized Debtors no later than thirty (30) days after the Confirmation Date. The foregoing deadline for filing Rejection Claims applies only to Rejection Claims arising out of executory contracts and unexpired leases that are rejected pursuant to the Plan.  Nothing in the Plan shall alter the deadline for filing a Rejection Claim for a party to an executory contract or unexpired lease that was rejected by separate motion or by operation of law.

9.4.    Rejection Claims.  Any Rejection Claim which is allowed and is not barred by Article 9.3 of the Plan shall be subject to the provisions of section 502(g) of the Bankruptcy Code, classified as an Unsecured (General) Claim, and shall be included in the Class of Unsecured (General) Claims against the specific Debtor that rejected the executory contract or unexpired lease giving rise to such Rejection Claim; provided, however, that any Rejection Claim based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date or upon the entry of the Confirmation Order, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements.  Nothing contained herein shall be deemed an admission by the Debtors or Reorganized Debtors that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors or Reorganized Debtors of any objections to such Claim if asserted.

9.5.    Cure Payments.  All cure payments which may be required by section 365(b)(1) of the Bankruptcy Code under any executory contract or unexpired lease that is assumed, or assumed and assigned, under the Plan shall be made by the Reorganized Debtor assuming, or

assuming and assigning, such executory contract or unexpired lease on the Initial Distribution Date unless other treatment is provided for such claim hereunder; provided, however, in the event of a dispute regarding the amount of any cure claim, the cure of any other defaults, the ability of the Reorganized Debtor to provide adequate assurance of future performance, or any other matter pertaining to assumption or assignment, the Reorganized Debtor shall make such cure payment and cure such other defaults and provide adequate assurance of future performance, all as may be required by section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.

## ARTICLE X.

## MAINTENANCE OF CAUSES OF ACTION / RESERVATION OF RIGHTS

10.1.   <u>Generally</u>.  Except as expressly set forth herein, all Causes of Action (including all Avoidance Actions), claims, counterclaims, defenses and rights of offset or recoupment belonging to any of the Debtors shall, upon the occurrence of the Effective Date, be retained by, received by and vested in the Reorganized Debtors for the benefit of the Debtors and the Debtors' estates.  Except as expressly set forth herein, the rights of the Reorganized Debtors to commence, prosecute or settle such Causes of Action, respectively, shall be preserved notwithstanding the occurrence of the Effective Date.  **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors will not pursue any and all available Causes of Action (including all Avoidance Actions) against them. The Debtors and their estates expressly reserve all rights to prosecute any and all Causes of Action (including all Avoidance Actions) against any Person, <u>except</u> as otherwise provided in the Plan**.  Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtors expressly reserve all Causes of Action (including all Avoidance Actions) for later adjudication, and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan.  Although all rights with respect to Avoidance Actions are preserved, the Plan does not contemplate the prosecution of preference or fraudulent conveyance claims.

10.2.   <u>Claims Against Claimants</u>.  Except as expressly set forth herein, the Reorganized Debtors shall retain all Causes of Action (including all Avoidance Actions), claims, counterclaims, defenses and rights of offset or recoupment as against all Claimants.  Nothing in the Plan shall waive or impair any Cause of Action (including all Avoidance Actions), claims, counterclaims, defenses and rights of offset or recoupment.  Any Cause of Action (including any Avoidance Action) claim, or counterclaim brought by the Reorganized Debtors against Creditors filing Claims in the Chapter 11 Cases shall constitute a "core" proceeding.

## ARTICLE XI.

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND EFFECTIVENESS OF PLAN

11.1.   <u>Conditions to Confirmation and Effectiveness of Plan</u>.  The Plan shall not become effective until the following conditions shall have been satisfied or waived by the Debtors, as appropriate, as determined in the Debtors' sole discretion:  (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtors; (b) all other

conditions precedent have been satisfied to the satisfaction of the Debtors; (c) the Bar Date has passed, and no additional claims have been filed which, in the sole discretion of the Debtors and their management, adversely impact the Plan; and (d) a notice of the Effective Date has been filed by the Debtors and thereafter served upon all Creditors and parties in interest. Any of the above conditions may be waived by the Debtors.

11.2. <u>Revocation of Plan.</u> The Debtors may revoke and withdraw the Plan at any time before the Effective Date. If the Debtors revoke or withdraw the Plan, or if confirmation of the Plan does not occur, then, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute (a) a waiver or release of any Claims or Causes of Action by or against the Debtors, as the case may be, or any other Person, or to prejudice in any manner the rights of such Debtors, or Person, in any further proceedings involving such Debtors, or (b) an admission, acknowledgment, offer or undertaking by the Debtors or any other party in interest.

## ARTICLE XII.

## DISCHARGE

12.1. <u>Discharge of Certain Majestic Debtors.</u> The terms, covenants and consideration under the Plan shall be in exchange for, and in complete satisfaction, discharge, and release of, all Claims of any nature whatsoever against Majestic, Majestic Properties, Majestic GP, Reorganized Majestic, Reorganized Majestic Properties, Reorganized Majestic GP and/or the Assets of Majestic, Majestic Properties and Majestic GP, including, without limitation, all Secured Claims and all Unsecured (General) Claims. Except as otherwise expressly provided herein, upon the Effective Date, Reorganized Majestic, Reorganized Majestic Properties and Reorganized Majestic GP, and their successors in interest and assigns, shall be deemed discharged and released pursuant to section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code; (c) the holder of a Claim based upon such debt has accepted the Plan; or (d) the Claim has been Allowed, Disallowed, or estimated pursuant to section 502(c) of the Bankruptcy Code. The Confirmation Order shall be a judicial determination of discharge of all liabilities of Reorganized Majestic, Reorganized Majestic Properties and Reorganized Majestic GP, and their successors in interest and assigns, other than those obligations specifically set forth pursuant to the Plan. Because Majestic Grapevine and Majestic GP II will not engage in business after consummation of the Plan, Majestic Grapevine and Majestic GP II will not receive a discharge.

12.2. <u>Discharge of Individual Debtors.</u> The terms, covenants and consideration under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Individual Debtors, Reorganized Individual Debtors or the Assets of the Individual Debtors, including, without limitation, all Secured Claims, Other Secured Claims and Unsecured (General) Claims. Both the Reorganized Individual Debtors and their successors in interest and assigns shall be deemed discharged and released pursuant to section 1141(d)(5) of the Bankruptcy Code from any and all Claims provided for in the Plan upon completion of all payments required to be made by the Reorganized Individual Debtors under the Plan and the granting of a discharge by the Bankruptcy Court in favor of the Reorganized Individual Debtors; <u>provided, however,</u> nothing contained herein shall be deemed a waiver of any Reorganized Individual Debtor's right to petition the Bankruptcy Court for a

discharge following confirmation of the Plan, but prior to completion of all payments required to be made by such Reorganized Individual Debtor under the Plan, pursuant to section 1141(d)(5) of the Bankruptcy Code.

12.3. **Injunction**. **On the Effective Date and <u>except</u> as otherwise provided herein, all Persons who have been, are, or may be holders of Claims against or Interests in the Debtors shall be permanently restrained and enjoined from taking any of the following actions against or affecting the Debtors, the Debtors' estates, the Assets, or their respective assets and property, with respect to such Claims or Interests (other than actions brought to enforce any rights or obligations under the Plan): (a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind with respect to any such Claim or Interest; (b) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order; (c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind; (d) asserting any control over, interest, rights or title in or to any of the Assets except as expressly provided in the Plan; (e) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Reorganized Debtors as assignees, except upon order of the Bankruptcy Court; and (f) performing any act, by any manner or means, whether directly or indirectly, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; <u>provided</u>, <u>however</u>, that this injunction shall not bar any Creditor from asserting any right granted pursuant to this Plan.**

12.4. <u>Automatic Stay</u>. The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtors and all Assets. Upon the Effective Date, the automatic stay shall be replaced by the injunction set forth in Article 12.3 above.

## ARTICLE XIII.

## CONSUMMATION OF THE PLAN

13.1. <u>Retention of Jurisdiction</u>. Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, for the purposes of sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)     To hear and determine any and all objections to or applications concerning the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense Claim or Claim;

(b)     To hear and determine any and all applications for payments of fees and expenses from the Reorganized Debtors' estates made by attorneys or any other Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed from the Reorganized Debtors' estates under the Bankruptcy Code, and any and all objections thereto;

(c)     To hear and determine pending applications for the rejection, assumption, or assumption and assignment of unexpired leases and executory contracts and the allowance of

Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any executory contract or unexpired lease;

(d)     To hear and determine any and all adversary proceedings, applications, or contested matters, including any remands or appeals;

(e)     To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation of all Collateral, including hearing all valuation motions, (iii) the determination of the validity of any Lien or claimed right of offset; and (iv) determinations of objections to Contested Claims;

(f)     To liquidate any disputed, contingent, or unliquidated Claims;

(g)     To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(h)     To determine all issues relating to the enforcement, fixing or liquidation of Claims;

(i)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(j)     To enable the Reorganized Debtors to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which the Reorganized Debtors may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws, including causes of action, controversies, disputes and conflicts between the Reorganized Debtors and any other party, including but not limited to, any Causes of Action, Avoidance Actions, objections to Claims, preferences, fraudulent transfers and obligations or equitable subordination;

(k)     To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(l)     To enforce the Plan injunction contained in Article 12.2 above;

(m)     To provide for and approve the sale after the Effective Date of any of the Assets free and clear of all Liens, claims and interests;

(n)     To enter and implement all such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the transactions contemplated thereunder;

(o)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(p)     To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(q)     To enter a final decree closing the Chapter 11 Cases; and

(r)     To determine the amount of the Bratton/Fair Tax Refunds in accordance with section 505 of the Bankruptcy Code.

13.2.   <u>Abstention and Other Courts</u>.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, this paragraph of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

13.3.   <u>Non-Material Modifications</u>.  The Reorganized Debtors may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  The Reorganized Debtors may undertake such nonmaterial modification pursuant to this paragraph insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

13.4.   <u>Material Modifications</u>.  Modifications of the Plan may be proposed in writing by the Debtors at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.  The Plan may be modified at any time after confirmation and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.  A holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## ARTICLE XIV.

## <u>MISCELLANEOUS PROVISIONS</u>

14.1.   <u>Severability</u>.  Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Reorganized Debtors may modify the Plan in accordance with Article XIII of the Plan so that such provision shall not be applicable to the holder of any Claim or Interest.  Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

14.2.   <u>Oral Agreements; Modification of Plan; Oral Representations or Inducements</u>.  The terms of the Plan, Disclosure Statement and Confirmation Order may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation.  The Plan may only be modified, amended or supplemented in writing signed by the Debtors or the Reorganized Debtors, as the case may be.  Neither the Debtors nor their attorneys have made any representation, warranty, promise or inducement relating to the Plan or its confirmation except as expressly set forth in the Plan or the Disclosure Statement.

14.3. <u>Waiver</u>. The Reorganized Debtors shall not be deemed to have waived any right, power or privilege pursuant to the Plan unless the waiver is in writing and signed by the Reorganized Debtors. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Reorganized Debtors, of any right pursuant to the Plan, including the provisions of this anti-waiver section. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power or privilege.

14.4. <u>Construction</u>. The Plan shall control over any inconsistent term of the Disclosure Statement. The Confirmation Order shall control over any inconsistent provision of both the Plan and Disclosure Statement.

14.5. <u>Notice</u>. Any notice or communication required or permitted by the Plan shall be in writing given, made or sent as follows:

(a) If to a Creditor, notice may be given as follows: (i) if the Creditor has filed no proof of claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of claim, then to address reflected in the proof of claim.

(b) If to Reorganized Debtors, notice shall be sent to the following addresses:

(i) Majestic Liquor Stores, Inc.
Attn: Ben Lanford, President
1111 Jacksboro Hwy.
Fort Worth, TX 76107
Email: blanford@majesticliquors.com

(ii) Majestic Texas Properties, L.P.
Attn: John M. Bratton
2125 Sutton Place
Plano, TX 75093
Email: johnbratton@verizon.net

(iii) Majestic Texas-Grapevine, L.P.
Attn: John M. Bratton
2125 Sutton Place
Plano, TX 75093
Email: johnbratton@verizon.net

(iv) Majestic GP, LLC
Attn: John M. Bratton
2125 Sutton Place
Plano, TX 75093
Email: johnbratton@verizon.net

(v)      Majestic GP II, LLC
Attn: John M. Bratton
2125 Sutton Place
Plano, TX 75093
Email: johnbratton@verizon.net

(vi)     John M. Bratton
2125 Sutton Place
Plano, TX 75093
Email: johnbratton@verizon.net

(vii)    Kyle T. Fair
Suzanne P. Fair
5609 Cradlerock Circle
Plano, TX 75093
Email: kylefair@gmail.com

Concurrently with service of such notice on Reorganized Debtors, a copy thereof shall be concurrently served in the same manner on the following legal counsel as follows:

(i)      J. Robert Forshey
Jeff P. Prostok
Forshey & Prostok, L.L.P.
777 Main Street, Suite 1290
Fort Worth, Texas 76102
(817) 877-4151 fax
Email: bforshey@forsheyprostok.com
Email: jprostok@forsheyprostok.com

(ii)     Joseph F. Postnikoff
Goodrich Postnikoff & Albertson, LLP
777 Main Street, Suite 1360
Fort Worth, TX 76102
(817) 335-9411 fax
Email: jpostnikoff@gpalaw.com

(iii)    John Y. Bonds, III
Shannon, Gracey, Ratliff & Miller, LLP
777 Main Street, Suite 3800
Fort Worth, TX 76102
(817) 336-3735 fax
Email: jbonds@shannongracey.com

(iv)    Joe E. Marshall
Deborah M. Perry
Munsch Hardt Kopf & Harr, PC
500 North Akard, Suite 3800
Dallas, TX 75201-6659
(214) 855-7584 fax
Email: jmarshal@munsch.com
Email: dperry@munsch.com

      (v)      United States Trustee
              Attn: Elizabeth Ziegler, Trial Attorney
              1100 Commerce Street, Room 976
              Dallas, TX 75242
              Email: elizabeth.ziegler@usdoj.gov

(c)     Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Reorganized Debtors of its new address in accordance with the terms of Article 14.5(b).

(d)     Any notice given, made or sent as set forth above shall be in writing and effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

14.6.   Setoffs.  The Reorganized Debtors may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim that they may have against such holder.

14.7.   Compliance with All Applicable Laws.  If notified by any governmental authority that they are in violation of any applicable law, rule, regulation, or order of such governmental authority relating to their businesses, the Reorganized Debtors shall comply with such law, rule, regulation, or order; provided that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate reserve has been set aside on the books of the Reorganized Debtors.

14.8.   Exculpations.  No member of the Committee or any Professional retained by the Committee shall ever have any liability to any Person (including any Creditor) other than the Debtors or Reorganized Debtors for any act, omission, or event in connection with, or arising out of, or relating to, any of the following: (a) the Chapter 11 Cases, including all matters or actions in connection with or relating to the administration of the Debtors' estates, (b) the Plan, including the proposal, negotiation, confirmation, or consummation of the Plan, or (c) the administration of the Plan on a post-confirmation basis.

14.9.   Binding Effect.  The Plan shall be binding upon, and shall inure to the benefit of the Reorganized Debtors, the holders of Claims or Liens, the holders of Interests, and their respective successors in interest and assigns.

14.10.  Governing Law, Interpretation.  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any plan documents without regard to conflicts of law.  The Plan shall control any inconsistent term or provision of any other plan documents.

14.11. <u>Payment of Statutory Fees</u>. All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on or before the Effective Date, and thereafter as such statutory fees become due.

14.12. <u>Filing of Additional Documents</u>. On or before Substantial Consummation of the Plan, the Reorganized Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.13. <u>Computation of Time</u>. If the final day for any distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such distribution, performance, act or event shall be extended to the next Business Day.

14.14. <u>Elections by the Reorganized Debtors</u>. Any right of election or choice granted to the Reorganized Debtors under the Plan may be exercised, at the Reorganized Debtors' election, separately as to each Claim, Creditor or Person.

14.15. <u>Release of Liens</u>. Except as otherwise provided in the Plan or the Confirmation Order, all Liens against any of the Assets shall be deemed to be released, terminated and nullified.

14.16. <u>Retiree Benefits</u>. Pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

14.17. <u>Rates</u>. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

14.18. <u>Notice of Entry of Confirmation Order</u>. Promptly upon entry of the Confirmation Order, the Debtors, as directed by the Bankruptcy Court, shall serve on all known parties in interest and holders of Claims and Interests, notice of entry of the Confirmation Order.

14.19. <u>Interest and Attorneys Fees</u>.

(a)     Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in the Plan, the Confirmation Order or as otherwise required by the Bankruptcy Court or by applicable law.

(b)     <u>Except</u> as set forth in the Plan or as ordered by the Bankruptcy Court, no award or reimbursement of attorneys fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim.

14.20. <u>Compliance with Tax Requirements</u>. In connection with the Plan, the Debtors shall comply with all withholding and reporting requirements imposed by federal, state and local Taxing Authorities and all distributions under the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, <u>including</u> income, withholding and other tax obligations, on account of such distribution under the Plan.

14.21.  **No Admissions.**  As to contested matters, adversary proceedings and other causes of action or threatened causes of action, the Plan shall not constitute or be construed as an admission of any fact or liability, stipulation, or waiver, but rather as a statement made in settlement negotiations.  The Plan shall not be construed to be conclusive advice on the tax, securities, and other legal effects of the Plan as to holders of Claims against, and Interests in, the Debtors or their affiliates, as debtors and debtors in possession in the Chapter 11 Cases.

[The remainder of this page has been left intentionally blank]

Dated: November 11, 2010.

Respectfully submitted,

**MAJESTIC LIQUOR STORES, INC.**

By:    /s/ John M. Bratton
       John M. Bratton, Vice President

**MAJESTIC TEXAS PROPERTIES, L.P.**

By:    /s/ John M. Bratton
       John M. Bratton, Manager of
       Majestic GP, LLC, Its General Partner

**MAJESTIC TEXAS-GRAPEVINE, L.P.**

By:    /s/ John M. Bratton
       John M. Bratton, Manager of
       Majestic GP II, LLC, Its General Partner

**MAJESTIC GP, LLC**

By:    /s/ John M. Bratton
       John M. Bratton, Manager and Member

**MAJESTIC GP II, LLC**

By:    /s/ John M. Bratton
       John M. Bratton, Manager and Member


       /s/ John M. Bratton
       John M. Bratton, Individually


       /s/ Kyle Tate Fair
       Kyle Tate Fair, Individually


       /s/ Suzanne Patricia Fair
       Suzanne Patricia Fair, Individually

APPROVED:

/s/ J. Robert Forshey
J. Robert Forshey
State Bar No. 07264200
Jeff P. Prostok
State Bar No. 16352500
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
bforshey@forsheyprostok.com
jprostok@forsheyprostok.com

ATTORNEYS FOR MAJESTIC LIQUOR STORES, INC.,
MAJESTIC TEXAS- GRAPEVINE, L.P.,
AND MAJESTIC GP II, LLC,
DEBTORS AND DEBTORS IN POSSESSION

AND

/s/ Joseph F. Postnikoff
Joseph F. Postnikoff
State Bar No. 16168320
GOODRICH POSTNIKOFF & ALBERTSON, LLP
777 Main St., Suite 1360
Fort Worth, TX 76102
Telephone: (817) 335-9400
Facsimile: (817) 335-9411
jpostnikoff@gaplaw.com

ATTORNEYS FOR MAJESTIC TEXAS
PROPERTIES, L.P. AND MAJESTIC GP, LLC,
DEBTORS AND DEBTORS IN POSSESSION

AND

/s/ John Y. Bonds, III
John Y. Bonds, III
State Bar No. 02589100
SHANNON, GRACEY, RATLIFF & MILLER, LLP
777 Main St., Suite 3800
Fort Worth, TX 76102
Telephone: (817) 336-9333
Facsimile: (817) 336-3735
jbonds@shannongracey.com

ATTORNEYS FOR JOHN MELVIN BRATTON,
KYLE TATE FAIR AND SUZANNE PATRICIA FAIR,
DEBTORS AND DEBTORS IN POSSESSION

L:\BFORSHEY\Majestic Liquor #5363\Plan and Disclosure Statement\First Amended Plan of Reorganization 11.11.10.doc

# PLAN EXHIBIT "A"

# PLAN EXHIBIT "A"

## SUMMARY OF TERMS AND CONDITIONS FOR F&M BANK EXIT FACILITY, NEW F&M BANK NOTE AND TREATMENT OF F&M BANK CLAIM

| | |
|---|---|
| **BORROWER:** | Reorganized Majestic |
| **LENDER:** | F&M Bank |
| **LOAN AMOUNT:** | $13 million revolving loan, with availability to be determined via a weekly borrowing base calculation |
| **CLOSING DATE:** | Effective Date of the Plan |
| **LOAN TERM:** | 3 years |
| **BORROWING BASE:** | Months 1-3: 80% for beer; 85% for liquor; 80% for wine |
| | Months 4-8: 75% for beer; 80% for liquor; 75% for wine |
| | Thereafter: 70% for beer; 75% for liquor; 70% for wine |
| **INTEREST:** | Months 1-8: Base rate utilized by F&M Bank (currently United States Prime rate) plus 6% |
| | Thereafter: Base rate utilized by F&M Bank plus 3% |
| **FACILITY FEE:** | $195,000 due and payable on the Effective Date of the Plan |
| **MONTHLY MONITORING AND ACCOUNT SERVICING FEE:** | $10,000 per month |
| **FACILITY TERMINATION / PREPAYMENT FEE:** | $260,000 if loan is repaid within one year of closing date |
| | $520,000 if loan is repaid between one and two years after closing date |
| | $780,000 if loan is repaid between two and three years after closing date |
| **PAYMENT OF PRE-EFFECTIVE DATE FEES AND DEFAULT INTEREST:** | All attorney's fees and expenses incurred by F&M Bank in connection with the Debtors' bankruptcy cases through October 31, 2010 which have not been disputed by Majestic, all other pre-Effective Date fees, and pre-Effective Date interest on the F&M Bank Claim at the default rate, shall be paid by Reorganized Majestic on the Effective Date of the |

Plan.

All attorney's fees and expenses incurred by F&M Bank in connection with the Debtors' bankruptcy cases during the period beginning on the Petition Date and ending on October 31, 2010 which are disputed by Majestic (which such disputed attorney's fees and expenses total approximately $211,000) and all attorney's fees and expenses incurred by F&M Bank in connection with the Debtors' bankruptcy cases during the months of November, 2010 and December, 2010 shall be paid by Reorganized Majestic by no later than June 1, 2011.

**FINANCIAL COVENANTS:**  Minimum fixed charge coverage ratio; maximum funded debt/EBITDA ratio; minimum annual net income requirement; and minimum annual inventory turns requirement

**ADDITIONAL CONDITIONS PRECEDENT AND TERMS:**  Confirmation of the Plan shall occur on or before December 31, 2010.

Payments on account of Class 2 Unsecured (General) Claims required under Article 4.2(c) of the Plan shall not commence until at least 8 months after the closing date of the F&M Bank Exit Facility.

Additional Distribution Funds (as defined in Article 4.2(d) of the Plan) shall be deposited in a separate escrow account by Reorganized Majestic and no Additional Distribution Funds shall be distributed to any holder of a Class 2 Unsecured (General) Claim until the New F&M Bank Note has been paid in full.

A lock box account shall be established at F&M Bank into which Reorganized Majestic's collections from operation of its business shall be deposited.

Field audits of Reorganized Majestic's inventory shall be conducted on a quarterly basis and all costs associated with such quarterly field audits shall be paid by Reorganized Majestic.

A certified audit of Reorganized Majestic's financial statements shall be conducted on an annual basis and all costs associated with such annual audit shall be paid by Reorganized Majestic.