U.S. BANKRUPTCY COURT  
NORTHERN DISTRICT OF TEXAS  

**ENTERED**

TAWANA C. MARSHALL, CLERK  
THE DATE OF ENTRY IS  
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed December 23, 2010**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| MAJESTIC LIQUOR STORES, INC., *et al.*, | ) | Case No. 10-43849-rfn11 |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

### ORDER CONFIRMING SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR MAJESTIC LIQUOR STORES, INC., AND ITS AFFILIATED DEBTORS, AS MODIFIED

Majestic Liquor Stores, Inc. ("Majestic"), Majestic Texas Properties, L.P. ("Majestic Properties"), Majestic Texas-Grapevine, L.P. ("Majestic Grapevine"), Majestic GP, LLC ("Majestic GP") and Majestic GP II, LLC ("Majestic GP II" and, together with Majestic, Majestic Properties, Majestic Grapevine and Majestic GP, the "Majestic Debtors") each commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") on June 6, 2010 (the "Petition Date", when referring to any of the Majestic Debtors). John

Melvin Bratton ("John Bratton") commenced a voluntary case under chapter 11 of the Bankruptcy Code and Kyle Tate Fair ("Kyle Fair") and Suzanne Patricia Fair ("Suzanne Fair" and, together with John Bratton and Kyle Fair, the "Individual Debtors") commenced a joint voluntary case under chapter 11 of the Bankruptcy Code on June 8, 2010 (the "Petition Date", when referring to any of the Individual Debtors). The Majestic Debtors and the Individual Debtors are hereafter referred to collectively as the "Debtors."

Since the Petition Date, the Debtors have managed their affairs and conducted their businesses as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. Pursuant to an *Order Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure and N.D. TX L.B.R. 1015.1 Directing Joint Administration of Cases* [Docket No. 42] entered on June 10, 2010, and an *Order* [Docket No. 148] entered on July 9, 2010, the Debtors' chapter 11 cases (the "Cases") are being jointly administered, for procedural purposes only, under Case No. 10-43849-rfn-11. On June 30, 2010, the Bankruptcy Court entered an *Order Granting Complex Chapter 11 Bankruptcy Case Treatment* [Docket No. 117] designating the Cases as a complex chapter 11 case.

The Office of the United States Trustee for the Northern District of Texas (the "U.S. Trustee") appointed an Official Unsecured Creditors' Committee for the Majestic Debtors (the "Committee") in these Cases. No trustee or examiner has been appointed in these Cases.

On November 30, 2010, the Debtors filed their *Second Amended Joint Chapter 11 Plan of Reorganization for Majestic Liquor Stores, Inc., and its Affiliated Debtors* (the "Second Amended Plan") and their *Second Amended Disclosure Statement Pursuant to Section 1125 of the United States Bankruptcy Code with Respect to the Second Amended Joint Chapter 11 Plan of Reorganized for Majestic Liquor Stores, Inc., and its Affiliated Debtors* (the "Disclosure Statement"). The Second Amended Plan, in the form in which it was transmitted for voting thereon, is recorded at Docket No. 623 and a copy is attached hereto as **Exhibit "A"**. The Disclosure Statement, in the form in which it was transmitted for voting on the Second Amended

Plan, is recorded at Docket No. 622.

On December 2, 2010, the Court entered an *Order Approving Second Amended Disclosure Statement Pursuant to Section 1125 of the United States Bankruptcy Code with Respect to the Second Amended Joint Chapter 11 Plan of Reorganization for Majestic Liquor Stores, Inc., and its Affiliated Debtors* (the "Disclosure Statement Order") [Docket No. 583]. The Disclosure Statement Order, among other things, (a) established December 16, 2010 at 5:00 p.m. Central Time as the deadline for voting on the Second Amended Plan (b) established December 17, 2010 at 5:00 p.m. Central Time as the deadline for objecting to the Second Amended Plan, and (c) scheduled a hearing for December 21, 2010, to consider confirmation of the Second Amended Plan ("Confirmation Hearing").

The Bankruptcy Court commenced and concluded the Confirmation Hearing on December 21, 2010. At the Confirmation Hearing, the Debtors offered, and the Bankruptcy Court admitted into evidence, *inter alia*, the *First Modification to the Second Amended Joint Chapter 11 Plan of Reorganization for Majestic Liquor Stores, Inc., and its Affiliated Debtors* (the "Modification"). A copy of the Modification is attached hereto as **Exhibit "B"**. Also admitted into evidence at the Confirmation Hearing was a term sheet setting forth the material terms of an agreement reached between NNN, the Individual Debtors and Centennial Acquisition, LLC ("Centennial Acquisition") concerning the Bratton/Fair Tax Refunds (the "Tax Refund Agreement"). The material terms of the Tax Refund Agreement are reflected in the document attached hereto as **Exhibit "C"**. The Second Amended Plan, as modified by (a) the Modification and all exhibits appended to the Modification, and (b) the terms of the Tax Refund Agreement, is hereafter referred to as the "Plan." At the conclusion of the Confirmation Hearing, the Court announced its ruling that the Plan would be confirmed.

On December 3, 2010, the Debtors transmitted solicitation packages in accordance with the Disclosure Statement Order as reflected in the *Certificate of Service* filed on December 6, 2010 [Docket No. 592].

Objections to confirmation of the Plan were filed by the following taxing authorities: (a) City of Azle, City of Highland Village, City of Lake Worth, Crowley ISD, Eagle Mountain-Saginaw ISD, Lubbock CAD and Tyler ISD [Docket No. 609]; (b) Lewisville Independent School District [Docket No. 631]; (c) Denton County [Docket Nos. 633 and 642]; and (d) Williamson County and Cherokee County [Docket No. 642]. Such objections to confirmation of the Plan are collectively referred to hereafter as the "Taxing Authorities Objections." The U.S. Trustee also filed an objection to confirmation of the Plan [Docket No. 636].

On December 17, 2010, the Debtors filed the *Tabulation of Ballots in Connection with Second Amended Joint Chapter 11 Plan of Reorganization for Majestic Liquor Stores, Inc. and its Affiliated Debtors* [Docket No. 634]. On December 18, 2010, Majestic and Majestic Grapevine filed their *Motion of Majestic Liquor Stores, Inc. and Majestic Texas-Grapevine, L.P. to Allow Inclusion of Late Filed Ballots in Determination of Acceptance or Rejection of Second Amended Plan of Reorganization* (the "Ballot Motion") [Docket No. 638]. Appended to the Ballot Motion as an exhibit is the *Amended Tabulation of Ballots in Connection with Second Amended Joint Chapter 11 Plan of Reorganization for Majestic Liquor Stores, Inc. and its Affiliated Debtors* (The "Ballot Tabulation").

NOW THEREFORE, the Court having considered the Plan, the Ballot Motion and Ballot Tabulation, all evidence adduced or introduced at the Confirmation Hearing, the arguments of counsel and agreements announced by counsel on the record at the Confirmation Hearing and the entire record of the Cases, and after due deliberation thereon and good cause appearing therefore, the Court hereby makes and issues the following Findings of Fact and Conclusions of Law and hereby orders:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This Order constitutes the Bankruptcy Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable by Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 7052 and 9014. Any and all findings of fact shall constitute

findings of fact even if they are stated as conclusions of law and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact.

      A.    <u>Jurisdiction and Venue</u>.  The Bankruptcy Court has subject matter jurisdiction to confirm the Plan pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(A), (L) and (O).  The Debtors are qualified to be debtors under section 109 of the Bankruptcy Code.

      B.    <u>Burden of Proof</u>.  The Debtors, as proponents of the Plan, have the burden of proving the elements of sections 1123 and 1129 of the Bankruptcy Code by a preponderance of the evidence, and, as set forth below, the Debtors have met that burden.

      C.    <u>Judicial Notice</u>.  The Court takes judicial notice of the entire record of proceedings in the Cases, including, without limitation, all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Bankruptcy Court during these Cases, including, without limitation, the Confirmation Hearing.

      D.    <u>The Record</u>.  The following record (the "<u>Record</u>") was established to support confirmation of the Plan:

(i) All documents identified by the Debtors at the Confirmation Hearing and all exhibits admitted into evidence at the Confirmation Hearing, including but not limited to those listed on the *Debtors' Witness and Exhibit List with Respect to Matters Set for Hearing on December 21, 2010* [Docket No. 628] filed with the Bankruptcy Court on December 16, 2010, including, without limitation, the Plan, the Disclosure Statement and all exhibits, schedules and attachments thereto;

(ii) The Ballot Tabulation; and

(iii) The statements and arguments of counsel and all testimony, including proffered testimony, on the record at the Confirmation Hearing, and all papers and pleadings filed with the Bankruptcy Court in connection with confirmation of the Plan.

The Record supports confirmation of the Plan and all related matters demonstrate, by a

clear preponderance of the evidence, that the Plan should be confirmed.

   E. <u>Resolution of Objections</u>. As presented at the Confirmation Hearing, and as provided for herein, the consensual resolutions of the Taxing Authorities Objections and the objection to confirmation of the Plan filed by the U.S. Trustee satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and are in the best interests of the Debtors and their estates and supported by the Record, and therefore should be approved.

   F. <u>Solicitation and Notice</u>. To obtain the requisite acceptance of the Plan, the Debtors completed solicitation of acceptances of the Plan by timely distributing the Disclosure Statement and related material to the holders of Claims against the Debtors classified as impaired claims entitled to vote under the Plan. The Debtors complied with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules and all other applicable laws in connection with the solicitation of votes on the Plan and provided notice of (i) the Confirmation Hearing, (ii) the December 16, 2010 deadline for voting on the Plan, and (iii) the December 17, 2010 deadline for filing and serving objections to confirmation of the Plan. Under the circumstances, the notice provided was due and proper with respect to all matters relating to the solicitation of votes on, and the confirmation of, the Plan and satisfied the requirements of due process with respect to all creditors, equity holders and parties in interest.

   G. <u>Voting by Impaired Classes (Except Class 4)</u>. The Bankruptcy Court granted the Ballot Motion at the Confirmation Hearing, which Ballot Motion requested that the Bankruptcy Court deem the Ballot Tabulation the official ballot tabulation required under the Disclosure Statement Order. Pursuant to the Plan, Classes 1, 2, 3, 5, 6, 7 and 10 are impaired. As evidenced by the Ballot Tabulation, each such class of impaired Claims voted to accept the Plan under section 1126 of the Bankruptcy Code and for purposes of section 1129(a)(8)(A) of the Bankruptcy Code.

   H. <u>Voting by and Treatment of Taxing Authorities (Class 4)</u>. Pursuant to the Plan, Class 4 is impaired. None of the holders of Ad Valorem Tax Claims against the Majestic

Debtors included in Class 4 voted to accept the Plan. However, as to the holders of Ad Valorem Tax Claims against the Majestic Debtors, the Plan satisfies the requirements of sections 1129(a)(9)(C) and 1129(b) of the Bankruptcy Code. In addition, the Taxing Authorities Objections were consensually resolved by the addition of language in paragraph 10 below.

   I. <u>Other Non-Voting Classes</u>. Classes 8, 9 and 11 are not impaired and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Such classes shall receive the treatment set forth in the Plan, unless otherwise stated in this Order.

   J. <u>Standing</u>. The Debtors have satisfied section 1121 of the Bankruptcy Code in that the Debtors have standing to file a plan of reorganization. Furthermore, the Plan identifies the entities and individuals submitting it as proponents, thereby satisfying Bankruptcy Rule 3016(a).

   K. <u>Confirmation Requirements</u>. By a clear preponderance of the evidence, the Plan satisfies each and every requirement of confirmation set forth in sections 1123 and 1129 of the Bankruptcy Code, to the extent applicable, as to each of the Debtors.

   L. <u>Centennial Transaction</u>. The proposed Centennial Transaction is the result of an arm's length, good faith negotiation between the parties thereto. All parties have been advised by legal counsel and have negotiated and agreed upon the proposed Centennial Transaction in good faith. Centennial Acquisition is a "good faith" purchaser within the meaning of section 365(m) of the Bankruptcy Code and is entitled to all the protections of a good faith purchaser under section 365(m) of the Bankruptcy Code. The APA and the proposed Centennial Transaction have been negotiated and proposed in good faith and entering into the APA and the Centennial Transaction constitutes a sound exercise of the Debtors' business judgment. The proposed Centennial Transaction is in the best interests of the estates and creditors of each of the Debtors. The Centennial Transaction shall result in a fair and reasonable price being paid for the Assets to be sold to Centennial Acquisition.

   M. <u>Best Interests of Creditors</u>. The holders of Allowed Claims have either

accepted the Plan or will receive distributions under the Plan of a value, as of the Effective Date, that is not less than the amount the holder of each such Claim would receive if each of the respective Debtors was liquidated under Chapter 7 on such date.  Consequently, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.  In addition, the present value of the distributions to be made to holders of Allowed Class 2 Claims entitled to receive distributions out of the sale proceeds from the Centennial Transaction is greater than the present value of the streams of payments that such holders of Allowed Claims would otherwise receive under the Plan.  All other impaired classes potentially affected by the Modification are either treated the same based on the closing of the Centennial Transaction (Class 1 – Convenience Claims Against Majestic) or have accepted the Plan (Class3 – F&M Bank Claim, Class 5 – Wells Fargo Claim, Class 6 – NRP Claim, and Class 7 – Leggett Estate Claim).

N. **Assignment of Assumed Contracts in Connection with Centennial Transaction**.  Among the Assets to be conveyed to Centennial Acquisition in connection with the Centennial Transaction are interests of Majestic and Majestic Properties in certain leases of real property, which such leases are identified in the APA and are included within the definition of "Assumed Contracts" as that term is defined in the APA.  The Assumed Contracts have been assumed by Majestic and/or Majestic Properties pursuant to section 365(a) of the Bankruptcy Code or pursuant to the terms of the Plan.  Pursuant to the Plan, the interests of Majestic and Majestic Properties in such Assumed Contracts shall be assigned to Centennial Acquisition pursuant to section 365(f) of the Bankruptcy Code.  Centennial Acquisition has provided adequate assurance of future performance of all such Assumed Contracts as required by section 365(f)(2)(B) of the Bankruptcy Code.  No cure of defaults, whether by cure payment or otherwise, is required under section 365(b) of the Bankruptcy Code with respect to any of the Assumed Contracts to be assigned to Centennial Acquisition.  Majestic and Majestic Properties gave notice of their intent to assume the Assumed Contracts and asserted a lack of any defaults

under such Assumed Contracts through both the Plan and through separate motions that were filed with the Bankruptcy Court and served upon all parties in interest entitled to receive notice of the same. No party filed an objection to the Plan or to any of the separate motions to assume the Assumed Contracts on the basis that any default exists which must be cured pursuant to section 365(b) of the Bankruptcy Code with respect to any of the Assumed Contracts to be assigned to Centennial Acquisition. The assumption of each of the Assumed Contracts to be assigned to Centennial Acquisition constitutes the exercise of the sound business judgment of the Debtor assuming such Assumed Contract and in all respects satisfies the business judgment test. Likewise, the assignment of such Assumed Contracts to Centennial Acquisition to occur in connection with the Centennial Transaction satisfies the requirements of section 365(f) of the Bankruptcy Code in all respects, constitutes the exercise of the sound business judgment of the Debtor assigning such Assumed Contract, and in all respects satisfies the business judgment test.

O.  **No Stays Applicable**.  Pursuant to Bankruptcy Rule 3020(e), as stated on the record at the Confirmation Hearing, the Plan shall become effective immediately on the respective Effective Date applicable to each Debtor. In addition, the stays provided for under Bankruptcy Rules 6004(h) and 6006(d) are waived and shall not apply to this Order, including the Centennial Transaction.

**ORDER**

Accordingly, it is hereby ORDERED that:

1. **Plan Confirmed**.  The Plan is hereby confirmed.

2. **Defined Terms**.  Capitalized terms not defined in this Order shall be given the meanings attributed to such terms in the Plan.

3. **Construction of the Plan**.  In the event of any conflict between this Order and any portion of the Plan, the provisions of this Order shall control.

4. **Further Authorizations**. The Reorganized Debtors and their officers, directors, employees, representatives, agents and attorneys are hereby fully authorized and empowered to perform, implement and consummate the provisions of the Plan and to execute and deliver and file, as appropriate, all necessary documents, or take any other action necessary to perform, effectuate or consummate, or remain consistent with, the Plan or this Order. The Debtors, including but not limited to Majestic and Majestic Properties, are authorized to enter into the APA and all other transaction documents provided for therein in connection with the Centennial Transaction. This Order shall constitute all approvals and consents, if any, required by the general corporate laws of the State of Texas and all other applicable business corporation or other laws of any governmental entity which has any jurisdiction with respect to the implementation and consummation of the Plan.

5. **Centennial Transaction Approved**. The proposed Centennial Transaction, the terms of which are set forth in the APA admitted into evidence at the Confirmation Hearing, is hereby approved in all respects.

6. **Sale of Assets Free and Clear of all Claims, Encumbrances, Liens and Interests**. Pursuant to section 363(f) of the Bankruptcy Code, the sale of the Assets to be transferred to Centennial Acquisition in connection with the Centennial Transaction shall be free and clear of all claims, encumbrances, liens, and interests (except as otherwise set forth in the APA and except for any liens securing the payment of property taxes for the year 2011), with such claims, encumbrances, liens and interests attaching to the proceeds of the sale, with the same nature, validity and priority that such interests encumbered the Assets prior to the sale.

7. **Good Faith Purchaser Status of Centennial Acquisition**. Centennial Acquisition is a "good faith" purchaser within the meaning of section 365(m) of the Bankruptcy Code and is entitled to all the protections of a good faith purchaser under section 365(m) of the Bankruptcy Code with respect to the Centennial Transaction.

8. <u>Assignment of Assumed Contracts to Centennial Acquisition Approved</u>. The proposed assignment of the Assumed Contracts to Centennial Acquisition in connection with the Centennial Transaction is hereby approved in all respects pursuant to section 365(f) of the Bankruptcy Code.

9. <u>Approval of the Tax Refund Agreement</u>. The Tax Refund Agreement was negotiated in good faith between NNN, the Individual Debtors and Centennial, is in the best interests of the Individual Debtors and their estates and creditors and is hereby approved in all respects.

10. <u>Treatment of Class 4 Ad Valorem Tax Claims</u>. The following provisions shall apply with respect to the Class 4 Ad Valorem Tax Claims against the Majestic Debtors and shall control any inconsistent provision of the Plan:

> Notwithstanding any other provisions contained herein, the Local Texas Tax Authorities[1] are the holders of allowed pre-petition claims for ad valorem property taxes for the 2010 tax year, and if the Plan is not confirmed prior to January 1, 2011, they shall also have administrative expense claims for the 2011 ad valorem taxes on property in which the Debtors hold an interest as of January 1, 2011. The Reorganized Debtor shall pay the 2011 taxes timely pursuant to applicable non-bankruptcy law. It is not necessary that the Local Texas Tax Authorities file an administrative expense claim or request for payment in order for these 2011 taxes to be deemed an allowed administrative expense. The administrative expense taxes are not discharged by entry of the confirmation order. The Debtor shall pay the pre-petition claims of the Local Texas Tax Authorities, at the Debtor's option, (a) in one lump sum payment, or (b) in 16 equal quarterly payments commencing no later than the first day of the first month which is 30 days after entry of the confirmation order. Such payments shall be calculated to result in payment in full of the tax claims with all applicable and accrued interest no later than the fifth anniversary of the Petition Date. These payments shall include interest from the Petition Date through the date of payment in full at the applicable state statutory rate of 1% per month from the Petition Date pursuant to 11 U.S.C. §§ 506(b), 511, and 1129. The Local Texas Tax Authorities shall retain their liens for pre- and post-

---

[1] The Local Texas Tax Authorities are comprised of Brownsboro ISD, Cherokee CAD, Dallas County, Gregg County, Hood CAD, Parker CAD, Roundrock ISD, Smith County, Tarrant County, Upshur County, Lewisville Independent School District, Williamson County, Cherokee County, Denton County, City of Azle, City of Highland Village, City of Lake Worth, Crowley ISD, Eagle Mountain-Saginaw ISD, Lubbock CAD and Tyler ISD.

petition taxes with the same validity, to the same extent and with the same priority they now hold until all taxes and related interest, penalties, and fees (if any) have been paid in full. In the event of a default under the plan, the Local Texas Tax Authorities shall send notice of default to counsel for the Debtor/Reorganized Debtor via facsimile or electronic mail, and the Debtor shall have 15 days from the date of such notice to cure said default. In the event of failure to cure the default timely, the Local Texas Tax Authorities shall be entitled to pursue collection of all amounts owed pursuant to applicable non-bankruptcy law without further recourse to the Bankruptcy Court. The Local Texas Tax Authorities shall only be required to send two notices of default; upon a third event of default, they may proceed to collect all amounts owed pursuant to applicable non-bankruptcy law without further notice. Failure to pay any post-petition ad valorem taxes prior to their becoming delinquent under Texas law shall constitute an event of default under the Plan. Should the property of the Debtor/Reorganized Debtor which comprises the collateral of the Local Texas Tax Authorities be sold outside the ordinary course of business, the liens and claims of the Local Texas Tax Authorities, constituting the first priority liens on the property pursuant to Texas Property Tax Code sec. 32.01, shall be paid from the first proceeds of sale, including any interest thereon.

11. <u>Payment of First Funds from Centennial Transaction to Satisfy Allowed Ad Valorem Tax Claims for the 2010 Tax Year</u>. Notwithstanding anything to the contrary in the Plan, the Modification, or any of the exhibits appended to the Modification, any sale proceeds received by Reorganized Majestic in connection with the Centennial Transaction on account of the transfer of Assets constituting collateral securing the payment of Allowed Class 4 Ad Valorem Tax Claims for the 2010 tax year shall be paid first to the holders of such Allowed Class 4 Ad Valorem Tax Claims, and no such sale proceeds shall be distributed to any other Creditor until such time as the Allowed Class 4 Ad Valorem Tax Claims secured by such transferred Assets are paid in full.

12. <u>Ability of Wells Fargo to Immediately Post Cuney Property for Foreclosure</u>. Notwithstanding anything to the contrary in the Plan or this Order, Wells Fargo is authorized to immediately post the Cuney Property for foreclosure.

13. <u>Treatment of Allowed Class 9 Claim of Chrysler</u>. Chrysler Financial Services Americas L.L.C. f/k/a DaimlerChrysler Financial Services Americas L.L.C. ("<u>Chrysler</u>") has a

perfected security interest in a 2006 Dodge Ram 1500, vehicle identification number 1D7HU18296S573145 (the "Vehicle"). Chrysler shall retain its lien on the Vehicle until all amounts due to Chrysler pursuant to its contract with Kyle Fair (the "Contract") are paid in full. The debt secured by the Vehicle will be paid in accordance with the Contract. All terms and provisions of the Contract shall remain in full force and effect. Despite any other provisions in the Plan, in the event of a default, Chrysler will be entitled to exercise all remedies set out in the Contract.

14. Assumption of Vehicle Lease with Mercedes by John Bratton. John Bratton assumes the unexpired lease with Mercedes-Benz Financial Services USA LLC f/k/a DCFS USA LLC ("Mercedes") on a 2009 Mercedes ML550, vehicle identification number 4JGBB72E59A469429 (the "Bratton Lease"). All terms and provisions of the Bratton Lease shall remain in full force and effect. Despite any other provisions in the Plan, in the event of a default, Mercedes will be entitled to exercise all remedies set forth in the Bratton Lease.

15. Assumption of Vehicle Lease with Mercedes by Kyle Fair. Kyle Fair assumes the unexpired lease with Mercedes on a 2008 Mercedes S550V, vehicle identification number WDDNG71X98A180516 (the "Fair Lease"). All terms and provisions of the Fair Lease shall remain in full force and effect. Despite any other provisions in the Plan, in the event of a default, Mercedes will be entitled to exercise all remedies set forth in the Fair Lease.

16. Objection Deadline. The Objection Deadline shall be the first Business Day that is at least ninety (90) days after the Effective Date of the Plan as to the applicable Debtor; provided, however, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of claim. The Objection Deadline may be extended one or more times by order of the Bankruptcy Court pursuant to a motion filed on or before the then applicable Objection Deadline without notice or a hearing.

17. Administrative Expense Claims (Generally). The holder of a Claim for an Administrative Expense, other than (a) such a Claim by a Professional, (b) a liability incurred

and payable after the Petition Date in the ordinary course of business by a Debtor, (c) an Administrative Expense Claim that has been Allowed on or before the Effective Date, or (d) an Administrative Expense Claim for ad valorem taxes for the year 2011, must file with the Bankruptcy Court and serve upon the Reorganized Debtors, the Committee, and the United States Trustee, as set forth in the Plan, a written notice of such Claim for an Administrative Expense within thirty (30) days after the applicable Effective Date.  Such notice must include at a minimum:  (a) the name of the Debtor(s) which are purported to be liable for such Claim, (b) the name, address, telephone number and fax number (if applicable) of the holder of such Claim, (c) the amount of such Claim, and (d) the basis of such Claim (including any documentation evidencing or supporting such Claim).  ***The failure to timely and properly file and serve a proof of Administrative Claim on or before the deadline set forth in this Order shall result in the Administrative Expense Claim being forever barred, disallowed and discharged without further order of the Bankruptcy Court.***  An Administrative Expense Claim with respect to which notice has been properly filed and served shall become an Allowed Administrative Expense Claim if no objection is filed within thirty (30) days after the later of (i) the applicable Effective Date, or (ii) the date of service of the applicable notice of Administrative Expense Claim or such later date as may be approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing.  If an objection is filed within such 30-day period (or any extension thereof), the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order.

18. <u>Administrative Expense Claims by Professionals</u>.  Except as otherwise provided in the Plan or in any prior order of this Court approving the employment of a Professional, each Professional entitled to assert a Claim for Administrative Expense and who holds or asserts such a Claim for Administrative Expense shall file with the Bankruptcy Court, and serve on all parties required to receive notice, an appropriate application within sixty (60) days after the applicable Effective Date.  A Claim for Administrative Expense by a Professional shall be

determined and allowed as appropriate by the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules and shall become an Allowed Claim for Administrative Expense only to the extent allowed by a Final Order of the Bankruptcy Court.

19. <u>Discharge of Certain Majestic Debtors</u>. On the Effective Date, Majestic, Majestic Properties, Majestic GP and their Assets shall be deemed and they each are discharged pursuant to section 1141(d) of the Bankruptcy Code in accordance with and to the extent provided in Article 12.1 of the Plan. All Claims against such Debtors are, and shall, as of the Effective Date, be deemed as, discharged to the full extent allowed by applicable law except as expressly set forth in the Plan or this Order; <u>provided</u>, <u>however</u>, nothing herein shall limit or diminish the rights of F&M Bank against the Reorganized Debtors under and pursuant to the F&M Exit Facility Documents, including without limitation the guarantees of the Individual Debtors. Without limiting the generality of the foregoing, the discharge shall apply to and cover both known and unknown Claims although the Court makes no determination in this Order as to which Creditors may constitute holders of unknown Claims. In addition, all such discharged Claims, both known and unknown, shall be subject to the statutory injunction pursuant to section 524 of the Bankruptcy Code.

20. <u>Discharge of Individual Debtors</u>. The Individual Debtors and their Assets shall be discharged pursuant to section 1141(d) of the Bankruptcy Code in accordance with, to the extent provided, and at the time specified in Article 12.2 of the Plan. Upon the occurrence of such discharge, all Claims against the Individual Debtors shall be deemed as discharged to the full extent allowed by applicable law except as expressly set forth in the Plan or this Order. Without limiting the generality of the foregoing, the discharge shall apply to and cover both known and unknown Claims although the Court makes no determination in this Order as to which Creditors may constitute holders of unknown Claims. In addition, all such discharged Claims, both known and unknown, shall be subject to the statutory injunction pursuant to section 524 of the Bankruptcy Code. Notwithstanding the foregoing or anything to the contrary in this

Order, based on the agreement reached by the Debtors and the U.S. Trustee to resolve the U.S. Trustee's objection to confirmation of the Plan, the Bankruptcy Court shall hold a separate hearing on December 29, 2010 at 3:30 p.m. Central Time at which the Bankruptcy Court shall determine whether the following debts of the Individual Debtors shall be deemed discharged as of the Effective Date applicable to the Individual Debtors: (a) that certain debt owed by John Bratton on account of the Interdebtor Claim held by Majestic Properties for money loaned to John Bratton and which is evidenced by the proof of claim filed by Majestic Properties in the amount of $50,000.00 in John Bratton's individual bankruptcy case and which was recorded in the official claims register in John Bratton's individual bankruptcy case as proof of claim no. 2; and (b) that certain debt owed by Kyle Fair on account of the Interdebtor Claim held by Majestic Properties for money loaned to Kyle Fair and which is evidenced by the proof of claim filed by Majestic Properties in the amount of $1,624,379.00 in Kyle Fair's individual bankruptcy case and which was recorded in the official claims register in Kyle Fair's individual bankruptcy case as proof of claim no. 8.

21. <u>Plan Injunction</u>. The injunction contained in Article 12.3 of the Plan (the "<u>Plan Injunction</u>") and the statutory injunction pursuant to section 524 of the Bankruptcy Code are both hereby incorporated into this Order, and both shall automatically become effective as to each particular Debtor on the Effective Date of the Plan applicable to each particular Debtor without further order of the Court. All holders of Claims, both known and unknown, are hereby enjoined and restrained, jointly, severally and jointly and severally, in accordance with and pursuant to the Plan Injunction and the statutory injunction pursuant to section 524 of the Bankruptcy Code.

22. <u>Automatic Stay</u>. The automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in effect as to a particular Debtor and its Assets until the occurrence of the Effective Date applicable to that particular Debtor when it shall be replaced by the Plan Injunction and the statutory injunction pursuant to section 524 of the Bankruptcy Code.

23. <u>Retention of Jurisdiction</u>. The Bankruptcy Court retains jurisdiction over the Cases, and all matters arising in, arising under, or related to the Cases and the Plan, as set forth in Article XIII of the Plan. Without limiting the foregoing, the Bankruptcy Court specifically retains the power and jurisdiction to enforce the terms of this Order and of the Plan, including the following:

(a) The discharge of Claims pursuant to section 1141(d) of the Bankruptcy Code and Articles 12.1 and 12.2 of the Plan;

(b) The Plan Injunction; and

(c) The statutory injunction pursuant to section 524 of the Bankruptcy Code.

24. <u>Property of the Estate</u>. Upon the applicable Effective Date, all Assets of a Reorganized Debtor shall vest in that Reorganized Debtor free and clear of all Liens, Claims, rights, title or interests, except as otherwise set forth in the Plan or this Order.

25. <u>Executory Contracts and Unexpired Leases</u>. Except as otherwise provided in this Order or any order of the Bankruptcy Court previously entered or to be entered hereafter with respect to any separate motion filed by any Debtor to assume or reject executory contracts and/or unexpired leases, the Debtors' respective executory contracts and unexpired leases are hereby assumed or rejected, as the case may be, as set forth in Article IX of the Plan.

26. <u>Corporate Existence</u>. The Reorganized Majestic Debtors shall continue to exist after the applicable Effective Date as separate entities. Subject to the terms of the Plan, the Reorganized Majestic Debtors shall hereafter be authorized, without further order of this Court, to conduct their affairs in accordance with the Plan, applicable law and their constituent documents.

27. <u>Exculpations</u>. The exculpations contained in Article 14.8 of the Plan are hereby approved. The members of and Professionals retained by the Committee are hereby so exculpated as set forth in Article 14.8 of the Plan.

28. <u>Binding Effect</u>.  The provisions of the Plan and this Order shall be binding upon the Reorganized Debtors and all Creditors and holders of Interests in the Debtors, any other party in interest or person making an appearance in the Cases, as well as their respective heirs, successors, assigns, affiliates, agents, representatives and similar officers or any person claiming by, through or in the right of any such person.

29. <u>Survival of Defenses and Reservation of Claims</u>.  Unless otherwise provided in the Plan, all Causes of Action (including Avoidance Actions), claims, counterclaims, defenses, affirmative defenses and rights of offset or recoupment belonging to any of the Debtors are hereby reserved, preserved and vested in the Reorganized Debtors, including but not limited to any Causes of Action (including Avoidance Actions), claims, counterclaims, defenses, affirmative defenses and rights of offset or recoupment as against any Claimant.

30. <u>Notice of Confirmation</u>.  No later than the third Business Day after the entry of this Order, the Reorganized Debtors shall serve a copy of this Order on all holders of Claims.

31. <u>Notice of Effective Dates</u>.  No later than the third business day after the occurrence of the Effective Date as to each Debtor, the applicable Reorganized Debtor shall file a notice of the Effective Date with the Clerk of the Bankruptcy Court, and serve a copy on all holders of Claims.

32. <u>Recordable Form</u>.  A certified copy of this Order shall be, and hereby is, deemed to be in recordable form and shall be accepted by any filing or recording officer or authority of any applicable governmental unit for filing and recording purposes without additional orders or supporting documents.

33. <u>Headings</u>.  Paragraph headings contained in this Order are for convenience of reference only and shall not affect the meaning or interpretation of this Order.

34. <u>Appeals or Motion for Reconsideration</u>.  In the event this Order is appealed or a motion for reconsideration is filed, the Debtors and Reorganized Debtors, and their respective officers, directors, employees, representatives and attorneys, are all hereby authorized to

proceed with the consummation and performance of the Plan unless and until this Order is stayed, reversed or modified by a court of competent jurisdiction.

35. <u>No Stay of Order Confirming Plan</u>.  The 14 day stay of an order confirming a plan of reorganization pursuant to Bankruptcy Rule 3020(e) shall not apply in these Cases and this Order shall be fully effective and immediately enforceable upon its entry.  In addition, the 14 day stays provided under Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and shall not apply to this Order.

### ### END OF ORDER ###

**[See Docket No. 654 for Exhibits A, B and C to this Order]**